GOVERNORS GROVE CONDOMINIUM ASSOCIATION, INC., ET AL. *v.* HILL DEVELOPMENT CORPORATION ET AL.

SUPERIOR COURT JUDICIAL DISTRICT OF FILE NO. 27614
MIDDLESEX

Memorandum filed January 28, 1980

*Broadman & Noble*, for the plaintiffs.

*Dzialo, Pickett & Allen*, for the named defendant.

*Hyman, Harding, Asmar & Svonkin*, for the defendant LaCava Construction Company.

BORDEN, J. The plaintiffs are a nonstock corporation which is a condominium association (hereinafter referred to as the association) and two individual condominium owners acting for themselves and for the class of past and present condominium unit owners. The right of the plaintiffs to represent all the class members was determined in an earlier decision in the case. *Governors Grove Condominium Assn.* v. *Hill Development Corporation,* 35 Conn. Sup. 199. The defendants are Hill Development Corporation and LaCava Construction Company (hereinafter referred to as Hill and LaCava). The plaintiffs' amended complaint (hereinafter referred to as the complaint), dated March 21, 1979, is in four counts, each directed to both defendants. Contesting the legal sufficiency of the allegations to state a claim upon which relief can be granted, both defendants move under § 152 of the 1978 Practice Book to strike each count of the complaint.

The purpose and scope of a motion to strike are identical to those of the demurrer under the previous rules of practice, and the rules which applied to the demurrer apply to the motion to strike. It is axiomatic that the factual allegations of the pleading to which the motion is addressed are to be considered as true; that unsupported legal conclusions are, however, not admitted; and that the motion is tested, not by the bare factual allegations, but "by the facts provable under the allegations of the pleading to which the . . . [motion] is addressed." *Fraser* v. *Henninger,* 173 Conn. 52, 60; *Tango* v. *New Haven,* 173 Conn. 203, 205.

I

The essential allegations of the first count are as follows: In 1971 Hill contracted with LaCava for the construction of thirty-eight condominium units, in ten separate buildings, on land owned by Hill and in accordance with plans and specifications provided

by Hill. The plans and specifications called for roofing of cedar shingle over wood stripping. Under the contract Hill conveyed title to the land to LaCava which, conducting itself as general contractor and owner, contracted for or installed the cedar roofs. Hill undertook to act in the capacity of sales agent and was the overall developer of the condominium project. On or about January 26, 1972, when the construction was substantially complete, LaCava conveyed title to the property to Hill, which created and filed on the land records a declaration of condominium. Pursuant to chapter 825 of the General Statutes Hill created the association. The declaration of condominium provided, inter alia, that Hill would designate and select a majority of the association's board of directors so long as Hill owned five or more units. From January 26, 1972, until Hill sold all the units, Hill's control of the association prevented the association from having any separate mind or existence and denied it the ability to act in its own interests or in those of the individuals who became unit owners while Hill was in control of the board of directors. At some time during or after construction Hill and LaCava became aware that the cedar roofs were defective and/or improperly installed. The defective construction was apparent to Hill and LaCava because leaks and seepage from rain and snow were a problem when the property was conveyed from LaCava to Hill. LaCava's construction contract contained an express or implied warranty that its work would be performed in a good and workmanlike manner and in accordance with standard practices for the specified materials. The installation of the cedar roofs violated LaCava's warranty in one or more of eight specified ways, causing specified damages to the plaintiffs.

The gist of the allegations against LaCava in the first count is breach of warranty, express or implied,

arising out of the contract between LaCava and Hill. A careful reading of *Coburn* v. *Lenox Homes, Inc.,* 173 Conn. 567, makes it clear that the lack of privity between LaCava and the plaintiffs is fatal to the plaintiffs' claim against LaCava.

To the extent that the claim rests on express warranty, "[t]he proposition that one who was neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract merits little discussion. *Knapp* v. *New Haven Road Construction Co.,* 150 Conn. 321 . . . . We can . . . dispose of the . . . plaintiffs' third count which alleges that the plaintiffs have an action based on express warranties in the contract between the defendant and the original purchaser." *Coburn* v. *Lenox Homes, Inc.,* supra, 570–71. Since the first count alleges neither that the plaintiffs were parties to the contract between Hill and LaCava nor that they were third party beneficiaries thereof; see *Knapp* v. *New Haven Road Construction Co.,* supra, 325; it fails to state a claim in express warranty against LaCava upon which relief can be granted.

The plaintiffs' claim in implied warranty is similarly lacking. The court in *Coburn* v. *Lenox Homes, Inc.,* supra, noted " 'that the overwhelming trend in recent decisions from other jurisdictions, as well as in our own Superior Court, is to invoke the doctrine of implied warranty of workmanship and habitability in cases involving the sale of new homes by the builder.' . . . The cases recognizing an implied warranty covering homes have almost uniformly limited recovery to actions by the original purchaser against the builder-vendor of a new home. . . . We find these limits to be well-founded and fatal to the plaintiffs' implied warranty claim." (Citations omitted.) Id., 571. The allegations of the first count as against LaCava do not amount to a claim by orig-

inal purchasers against a builder-vendor. The cases relied on by the plaintiffs are not in point. *Hamon* v. *Digliani,* 148 Conn. 710, and its progeny involved the abolition of the privity requirement as to the manufacture and sale of goods, not homes. Cf. *Coburn* v. *Lenox Homes, Inc.,* supra, 572–73. *Hartford* v. *Associated Construction Co.,* 34 Conn. Sup. 204, involved a claim grounded in strict products liability under § 402A of the Restatement (Second) of Torts, and *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, involved a claim against the manufacturer and distributor of roofing insulation.

The court in *Coburn* did appear to imply that where a house is the product of a mass marketing scheme or is designed as a temporary dwelling, and where the builder attempted to insulate itself behind a wall of intermediaries who destroyed the chain of privity, the doctrine of privity might not apply. See *Coburn* v. *Lenox Homes, Inc.,* supra, 572–73. No such facts are provable under the allegations made here, however. The *Coburn* case also recognized that privity is not a prerequisite to a negligence claim against a home builder-vendor; but no such claim is alleged here. Id., 574–76.

As against Hill the first count is an a fortiori case. Not only does the count fail to allege that the plaintiffs were parties to the contract or intended beneficiaries thereof, or that they were in privity with the implied warrantor, but it also fails to allege any warranty by Hill. The only warranty, express or implied, alleged is that of LaCava.

The plaintiffs claim in their brief that Hill's liability is based on a theory of a joint enterprise between Hill and LaCava. There is, however, no allegation of that in the first count, nor would the allegations of the business relationship between the

defendants, even read broadly, permit proof thereof. Nor are there any allegations of a combination of property, money, efforts, skill or knowledge in a common undertaking, with sharing of profits and losses, necessary to spell out a claim of joint adventure or enterprise. See *Wall* v. *Wason,* 146 Conn. 32, 36; *Lesser* v. *Smith,* 115 Conn. 86, 89. And, in any event, in order for this theory to avail the plaintiffs, sufficient facts have to be alleged to hold liable one of the alleged joint adventurers. That has not been done.

The plaintiffs also claim in their brief that the first count contains allegations that Hill "created and controlled the construction." Suffice it to say that, while this claim may appear in the brief, the court does not perceive it in the complaint.

Accordingly, the motion to strike the first count is granted as to both defendants.

## II

The second count incorporates the allegations of the first count and adds that Hill's "undertaking to act as developer and sales agent of the subject Condominium created an express or implied warranty of quality by 'Hill' in favor of unit buyers which warranty applied to the quality of construction of the roofs."

As against LaCava, the second count adds nothing to the first count. Therefore the motion to strike is granted as to LaCava.

As against Hill, the additional allegation supplies the missing link in the chain of privity. While the pleading is something less than a model of artfulness, it would permit proof of facts that Hill sold condominium units to some of the members of the class represented by the plaintiffs and that those

sales carried a warranty with them.[1]  As to the nature of that warranty, the allegation is that it was a "warranty of quality . . ." which applied to the quality of construction of the roof.  Again, while this may be somewhat general, it can only be reasonably interpreted as having been intended to mean and to refer to the warranty of good workmanship and standard practices for specified materials incorporated in the second count by reference to the first count.  Thus read, the second count amounts simply to a claim that Hill sold condominium units to some of the class with warranties, express or implied, that the roofs had been constructed in a good and workmanlike manner and in accordance with standard practices for the materials specified for them.

To the extent that the claim is one of sale with an express warranty, it is one of simple contract and, since the parties are in privity, it is legally sufficient. To the extent that it is one of sale with an implied warranty, however, the language of *Coburn* v. *Lenox Homes, Inc.,* supra, 571, applies:  "The cases recognizing an implied warranty covering homes have almost uniformly limited recovery to actions by the original purchaser against the builder-vendor of a new home.  See, e.g., cases collected at 25 A.L.R.3d 383, 413–19.  We find these limits to be well founded and fatal to the plaintiffs' implied warranty claim." Since Hill is claimed to be the vendor, but not the builder-vendor, and since the allegations do not suffice to spell out a joint enterprise by Hill with LaCava, the builder, the allegations fail to state a claim in implied warranty.

---

[1] Particularly, the allegations that Hill "undertook to act in the capacity of sales agent and was the overall developer of . . . the condominium . . . project"; the reference to the period "[f]rom January 26, 1972 and until the defendant 'Hill' had sold all the units it owned"; and the reference to the claimed warranty by Hill "in favor of unit buyers."

Accordingly, as against Hill, the motion to strike is denied insofar as the second count states a claim based on sales with express warranties. The motion is granted insofar as the second count purports to state a claim based on sales with implied warranties.

### III

The third count incorporates the allegations of the second count, and adds essentially the following allegations: Between December 19, 1972, and January 4, 1973, Hill and LaCava discovered and identified a number of roof leaks and construction defects. Inspection indicated that the roofs would require extensive work to correct the leaks. From January 4, 1973, to the date of the complaint Hill and LaCava entered into a combination or conspiracy in order to keep the defective conditions of the roofs a secret. In furtherance of this combination and conspiracy, Hill and LaCava carried out one or more of the following actions: they agreed not to repair or replace the roofs; they agreed to make an inexpensive and temporary repair in order to avoid discovery of the worst of the leaks while the units were being sold; they agreed that Hill would not enforce its contract with LaCava for correction of the defects; they agreed to keep information about the condition of the roofs from the association and the plaintiff unit owners. Hill and LaCava fraudulently concealed from the plaintiffs the existence of the defective conditions of the roofs until approximately March 14, 1977. The combination and conspiracy led to the damage suffered by the plaintiffs as specified in the first count.

The third count, therefore, is grounded on the theory of civil conspiracy. The gist of a civil action for conspiracy is not conspiracy as such, without more, but the damage caused by the acts committed pursuant to the formed conspiracy. *Benoit* v. *Amalgamated Local 299,* 150 Conn. 266, 276; *Cole* v. *Asso-*

*ciated Construction Co.,* 141 Conn. 49, 54. There must be something done pursuant to the conspiracy which harms the plaintiff. "The requisites of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Williams* v. *Maislen,* 116 Conn. 433, 437. Thus all conspirators are civilly liable for the damage resulting from any overt act committed by one of them pursuant to the combination.

Here there is no question that the plaintiffs have alleged both a combination between Hill and LaCava and resulting damage to the plaintiffs. Thus the first and fourth requirements are satisfied. As to the third, the overt act in furtherance of the combination, the defendants make much of the fact that the actions claimed by the plaintiffs to have been taken by Hill and LaCava in furtherance of the conspiracy were labeled by the plaintiffs as further agreements rather than as actions—namely, the agreements not to repair, to make temporary repair only, not to enforce the contract against LaCava for corrective action, and to keep information from the plaintiffs. The allegations that Hill and LaCava agreed to do those things would, however, permit proof that they did in fact do them. See *Tango* v. *New Haven,* 173 Conn. 203. Furthermore, the allegations that Hill and LaCava fraudulently concealed the defects from the plaintiffs may fairly be construed as being in furtherance of the combination. The court concludes, therefore, that the "overt act" is sufficiently alleged.

This leaves the issue of whether plaintiffs have sufficiently alleged that the combination was to do

an unlawful act or a lawful act by unlawful means.[2] A cause of action for civil conspiracy must allege the purpose or objective of the claimed conspiracy. *Benoit* v. *Amalgamated Local 299,* 150 Conn. 266, 268–69. Here the alleged purpose or objective was "to keep the defective condition of the roofs a secret." The court concludes that this allegation, when read together with the other allegations of the third count, sufficiently alleges either an unlawful act or a lawful act by unlawful means.

To constitute fraud by nondisclosure or suppression there must be a failure to disclose known facts and, as well, a request or an occasion or circumstance which imposes a duty to speak. *Duksa* v. *Middletown,* 173 Conn. 124, 127; *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283. Such a duty arises when a vendor of property conceals from his vendee a material fact affecting it. "A vendor of property may not do anything to conceal from the vendee a material fact affecting it . . . or deliberately hide defects, for, in so doing, he is not merely remaining silent but is taking active steps to mislead." *Gayne* v. *Smith,* 104 Conn. 650, 652; *Egan* v. *Hudson Nut Products, Inc.,* 142 Conn. 344, 348.

The allegations of this count involve a sale by Hill, with express warranties of workmanship and material, to some of the plaintiffs, and fraudulent concealment from the plaintiffs of the roofs' defective conditions. Those allegations spell out a breach of legal duty owed by Hill to the plaintiffs. Under these circumstances, therefore, the combination or conspiracy of Hill and LaCava to keep the defects a secret was to perform either an unlawful act or a lawful act by unlawful means, i.e., to effectuate the sales by means of concealment of the defects.

---

[2] There is no claim here that any criminal activity is involved.

LaCava argues that it cannot be liable under this count because there are no allegations that it had any duty to disclose. Therefore, it argues, the purpose of the alleged conspiracy was not unlawful as to it. It is true that, under the facts alleged here, only Hill had the duty to disclose. While LaCava cites no authority for its proposition, and while the court has found no Connecticut authority on point, persuasive precedent exists elsewhere for the proposition that an action for civil conspiracy will lie for breach of legal duty even though not all the alleged conspirators are under the duty. See *Jackson* v. *Smith,* 254 U.S. 586; *Laventhol, Krekstein, Horwath & Horwath* v. *Tuckman,* 372 A.2d 168 (Del.); *Bimba Mfg. Co.* v. *Starz Cylinder Co.,* 120 Ill. App. 2d 170. The court holds, therefore, that even though insufficient facts are pleaded to impose a duty of disclosure on LaCava, the sum of the allegations against LaCava is sufficient to bring LaCava within the circle of conspiratorial liability. Those allegations are, in essence, that LaCava improperly installed the roofs, that it knew of the defects, and that it conspired with Hill, which had a duty of disclosure, to keep the defects secret.

Accordingly, the motion to strike the third count is denied as to both defendants.

## IV

The fourth count incorporates the allegations of the third count and adds essentially the following allegations: Hill used its power to control the association's board of directors to conceal the roof defects from the association and the unit owners in furtherance of its combination and conspiracy with LaCava. This power to control the board of directors created a fiduciary relationship between Hill and the association which mandated disclosure so that the association could take action to protect

itself and the unit owners. The violation of this fiduciary duty led to the damages specified in the first count.

As against Hill, the fourth count states a claim upon which relief can be granted. Although there do not appear to be any Connecticut cases specifically on point, it is a well established rule of law that a dominant or majority shareholder bears the same fiduciary duty to the corporation and its minority shareholders as does a director. *Pepper* v. *Litton,* 308 U.S. 295; *Southern Pacific Co.* v. *Bogert,* 250 U.S. 483; *Perlman* v. *Feldmann,* 219 F.2d 173 (2d Cir.) ; *Cathedral Estates* v. *Taft Realty Corporation,* 157 F. Sup. 895 (D. Conn.), aff'd., 228 F.2d 85 (2d Cir.). See also *Klopot* v. *Northrup,* 131 Conn. 14; *Mills* v. *Tiffany's, Inc.,* 123 Conn. 631. The relationship described here between Hill and the association is directly analogous to that between a majority shareholder and his corporation. Just as a majority shareholder is a fiduciary for his corporation, so was Hill, by virtue of its power to control the association's board of directors, a fiduciary for the association. Nor does it matter that Hill's dominant position arises from its power to select directors based on the number of condominium units sold rather than on a percentage of stock ownership. "[T]he doctrine by which the holders of a majority of the stock of a corporation who dominate its affairs are held to act as trustees for the minority, does not rest upon such technical distinctions. It is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation." *Southern Pacific Co.* v. *Bogert,* supra, 492.

As against LaCava, the fourth count essentially alleges participation in a conspiracy with Hill to conceal the defects, which concealment was a vio-

lation of Hill's fiduciary duty to the association. Although LaCava is not alleged to have been in a fiduciary relationship with the association, the allegations that it created the defects, that it knew of them, and that it conspired with Hill to conceal them in violation of Hill's fiduciary duty are legally sufficient. "[P]ersons who knowingly join a fiduciary in an enterprise which constitutes a breach of his fiduciary duty of trust are jointly and severally liable for any injury which results." *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* 372 A.2d 168, 170 (Del.); *Jackson v. Smith,* 254 U.S. 586; *Bimba Mfg. Co. v. Starz Cylinder Co.,* 120 Ill. App. 2d 170.

Accordingly, the motion to strike the fourth count is denied as to both defendants.