[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Richard K. Fruin, seeks in this action to recover a $25,500 deposit that he made in May of 1989, in connection with his proposed purchase of a condominium unit in Old Greenwich. The developer, owner and seller of the unit is the named defendant, The Colonnade One at Old Greenwich Limited Partnership (Colonnade One), a limited partnership (hereinafter "defendant.")[1]
The purchase agreement between the plaintiff and the defendant was dated May 17, 1989. It provided for a closing date of August 15, 1990, and a purchase price of $225,000 for Unit No. 114 at Old Greenwich Gables. The contract did not contain any contingencies. Plaintiff and defendant exchanged several letters regarding the closing date, as it became evident that defendant would not complete construction of the unit in question by the original closing date of August 15, 1990. The plaintiff wrote to defendant on June 11, 1990, indicating he was "not in a hurry to close," and on June 18, 1990, the defendant, by one Alan M. Leeds, its Sales Director, replied that the closing could be extended at least for a couple of weeks into September of 1990, and "as we get closer to September, we may be able to push the closing back another couple of weeks . . . but this cannot be guaranteed at this time."[2]
In the meantime, the plaintiff enlisted the aid of the defendant's sales office, known as Yankee Property of Ct., Inc., in an attempt to sell to a third party the unit which he had contracted to purchase. The relevance of this attempt to resell or assign his contract of sale to the resolution of this case is that it illustrates that plaintiff had, by the summer of 1990, decided that he did not wish to purchase at Old Greenwich Gables.
On August 10, 1990, Leeds, on behalf of the defendant, wrote to the plaintiff that "we would be able to delay the closing on your aforesaid purchase until October 15, 1990," but that the closing must take place on that date whether or not a new purchaser for plaintiff's unit was found. The plaintiff countersigned this letter, which meant he was "accepting this revised closing date." On September 26, 1990, the plaintiff wrote to the defendant requesting "an indefinite extension of my closing date for October 15, 1990." The stated reason for this request was that plaintiff was an officer in an United States Army Reserve unit and thought he might be called to active duty because of "the current crisis in the Persian Gulf."[3]
CT Page 10398
The defendant replied to this request of September 26, 1990, by a letter from its attorney stating that defendant would agree with plaintiffs request for a postponement of the closing from October 15, 1990, but that the closing must be "no later than January 15, 1991." The plaintiff replied to this proposal in a letter to his attorney dated October 19, 1990, which was then forwarded to defendant. The plaintiff rejected the offer by defendant to extend the closing date to January 15, 1991, and again mentioned the possibility of being called to active duty in the Army. In the letter, plaintiff stated that "I have no intention of agreeing to those terms because it is impossible to agree to anything such as that, based on my military alert status re: the Middle East situation." He also refers in this letter to the inability of the defendant's sales agency, Yankee Property of Ct., Inc., to resell the unit on his behalf.
After the defendant refused to return the downpayment of $25,500, plaintiff commenced this action with a nine count complaint. In the first count, plaintiff alleges that the defendant was unable to close on October 15, 1990, as had been agreed in the contract, and therefore the contract had been breached by defendant and was accordingly terminated. In the second count, plaintiff claims that the contract was mutually rescinded. Count three alleges a violation of General Statutes52-550, the Statute of Frauds, because the purchase price and closing date were too indefinite. A breach by the defendant of the implied covenant of good faith and fair dealing is claimed in the fourth count. The fifth count alleges eleven violations of General Statutes 47-200 et seq., the Common Interest Ownership Act (CIOA). The sixth count claims that defendant violated General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), in a number of different ways, including its it alleged violations of CIOA. Count seven alleges that all the defendants engaged in a civil conspiracy to damage the plaintiff by violating CIOA in a number of ways, including the publication of a Public Offering Statement (POS) which was misleading and illegal. The eight count claims that the defendant was unjustly enriched, and the ninth alleges that there are material variances between the POS and the recorded Declaration of Condominium.
The case was tried to the court and our conclusion from the testimony and exhibits is that the plaintiff has forfeited his deposit and that none of the nine counts in the complaint warrant CT Page 10399 a contrary result. The original closing date of August 15, 1990 proved impossible to meet because of construction delays, but the contract contained a clause providing that the closing could be extended for up to ninety days after August 15, 1990. The defendant proposed October 15, 1990 as a closing date and the plaintiff agreed. As that date grew near, however, plaintiff asked for an indefinite extension of the closing date. Defendant refused to agree to an indefinite extension, but did offer to close on January 15, 1991. Plaintiff refused and announced that the contract was terminated. From these facts, the court is of the opinion that the plaintiff Fruin breached the contract and has no right to recover the $25,500 deposit he paid to the defendant.
It is clear from the plaintiff's testimony at the trial that by September of 1990, he had changed his mind about buying at Old Greenwich Gables. One reason clearly was that he had been unable to sell his home in Valley Cottage, New York, but there were no contingencies in the contract, and the plaintiff testified he had the financial resources to purchase in Old Greenwich even without selling his other home. A second reason was his anticipation of being called to active duty because of the Gulf War. If this had in fact occurred, a different result might ensue under federal legislation,[4] but the plaintiff was not called to active duty and he kept his same civilian job. Whatever his motivation, clearly the plaintiff changed his mind about purchasing the condominium unit at the Old Greenwich Gables, and hence has no right to a return of his downpayment.[5]
Plaintiff contends that the liquidated damage clause in the contract constitutes a penalty and that defendant was not damaged even if he is found in default. "It is settled law that a contract provision which imposes a penalty for a breach of the contract is contrary to public policy and is invalid, but a contractual provision which fixes liquidated damages for a breach of contract is enforceable if it satisfies certain conditions . . . . The conditions which will justify an agreement for liquidated damages are: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a CT Page 10400 breach of the contract. No provision in a contract for the payment of a fixed sum as damages will be enforced, however, in a case where the court sees that no damage has been sustained. The party seeking to repudiate a clause that fixes a sum as damages has the burden of showing that the agreed sum is so exorbitant as to be in the nature of a penalty." (Citations and internal quotation marks omitted.) St. Margaret's-McTernan School, Inc. v. Thompson, 31 Conn. App. 594, 597-98, 627 A.2d 449 (1993).
The plaintiff in this case has, in my opinion, failed to sustain its burden of proving that forfeiting the 10% deposit, $225,000, is so "exorbitant" as to constitute a "penalty." The defendant took the unit in question off the market in May 1989, when it signed a contract with the plaintiff, and it was not until October of 1990 when plaintiff unequivocally repudiated the agreement, that it was again available for sale. Any attempt to fix the precise damages which the seller would sustain in the event of a default by a purchaser would be difficult and imprecise, and therefore the parties agreed that the deposit would be forfeited if such a default ensued.
With respect to the contention that the defendant violated CIOA, and that the POS and the recorded Declaration of Condominium were at variance, the plaintiff testified: (i) that he had read both documents; (ii) that he was represented by an attorney, S.D. Millar, Jr., at the time he signed the purchase agreement; (iii) that he asked questions of his lawyer about these documents and the purchase agreement; (iv) that he was fully satisfied with the answers received from his lawyer; and (v) that violations of CIOA or variances between the POS and the Declaration, if any, played no role at all in his decision to terminate the contract. As a result, I have not analyzed each and every alleged violation of CIOA, except to note that they appear overly technical in nature, and serve no role in resolving the issue before the court, which is simply whether the plaintiff is entitled to a refund of his downpayment, or whether he breached the purchase agreement and is not so entitled.
The other allegations in the complaint do not warrant a judgment for the plaintiff either. The Statute of Frauds claim is that the purchase price was too indefinite because the contract stated that the price of the unit was $255,000, but that plaintiff could purchase for a lesser price if a similar unit was sold to another person prior to closing for under $255,000.[6]
"`[A memorandum of sale] must state the contract between the CT Page 10401 parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement.'" Garre v. Geryk, 145 Conn. 669, 672-73, 145 A.2d 829
(1958). In Garre, the court found that the agreement did not furnish a basis for the ascertainment of the area of the property, so that the purchase price could not be ascertained. Id., 674. "As the agreement failed to furnish the basis for determining the total purchase price and the amount of the purchase money mortgage, which are essential terms, it did not comply with the Statute of Frauds." Id. See also Didriksen v. Harens, 136 Conn. 41, 47, 68 A.2d 163 (1949) (where contract provided that plaintiff would pay agreed price less any amount due on mortgage when transaction complete, Statute of Frauds not violated because this was "within the rule that the essentials of the agreement must be determined from the memorandum itself or `by a reference contained therein to some other writing or thing certain'"). The contract in this case indicated that if a unit similar to that being purchased by the plaintiff was sold at a lesser price, the plaintiff could buy his unit at the same price. I believe that the price of the plaintiff's unit could be ascertained with reasonable certainty and that there is no violation of the Statute of Frauds.
As to the claim that the defendant did not act in good faith or display fair dealing in its relationship with plaintiff, it is axiomatic that "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231,238, 618 A.2d 501 (1992). "It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact." Id., 237, n. 11. The claim of bad faith and unfair dealing has not been proven. The defendant was ready to close title, but the plaintiff unilaterally announced that the contract had been terminated. Even if there were violations of CIOA on the part of defendant, such violations played no role in the plaintiffs change of mind about purchasing his unit, and hence are immaterial in this case.
The sixth count claims the defendant violated CUTPA. "In CT Page 10402 determining whether a practice violated CUTPA, we use the following criteria: (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [,] competitors or other businessmen." (Internal citations and quotation marks omitted.) Dadonna v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 2543,550 A.2d 1061 (1988). Based on this definition, I disagree with plaintiffs assertion that the defendant violated CUTPA in any fashion, including the claim of alleged violations of CIOA which, as noted, are irrelevant even if true.
Similarly, the evidence did not indicate that the defendants' alleged violations of CIOA amounted to a civil conspiracy. A civil action for conspiracy requires a combination between two or more persons, to do a criminal or unlawful act or a lawful act by criminal or unlawful means. Governors Grove Condominium Assn., v. Hill Development Corp., 36 Conn. Sup. 144, 152, 414 A.2d 1177
(1980). The act must be done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, and the action must result in damage to the plaintiff. Id. There was no credible evidence at the trial to substantiate the claim of conspiracy.
The contention that defendant was unjustly enriched is also rejected because the plaintiff agreed in writing in the contract that he would forfeit his deposit if he refused to close. "The right of recovery for unjust enrichment is equitable, its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted [benefited], (2)(2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal citations and quotation marks omitted.) Polverari v. Peatt, 29 Conn. App. 191, 199-200,614 A.2d 484 (1992). In this case, there was no unjust enrichment because plaintiff signed the contract which contained the liquidated damages clause in case he defaulted, and then did just CT Page 10403 that when he changed his mind about purchasing the unit in question. "It is of course well established that contracting parties are free to impose conditions upon contractual liability." Grenier v. Compratt Construction Co., 189 Conn. 144,148, 454 A.2d 1289 (1983).
The defendant contends that it is entitled to damages of more than $25,500, because it allegedly suffered damages in a greater amount, but I disagree, because defendant signed a contract to retain the deposit if the purchaser reneged on the agreement, and should be bound by that agreement.
In summary, judgment may enter for the defendant, permitting it to retain the deposit received from the plaintiff, as well as costs to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 1st day of December, 1993.
William B. Lewis, Judge