[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#173)
On October 14, 1994, the plaintiff, Gamlestaden PLC (Gamlestaden), brought this action against the defendants, Adam Backstrom, Magnus Lindholm, the "loan defendants,"[1] the "shipping defendants,"[2] and the "real estate defendants."[3]
The plaintiff alleges that Backstrom and Lindholm regularly conduct business through several companies, including Starlux. In fact, the plaintiff alleges that Backstrom and Lindholm dominate and control Starlux, the shipping defendants and the real estate defendants, and that Backstrom dominates and controls Castlegar.
The plaintiff alleges that in 1987 it began to lend money to the loan defendants pursuant to the terms of written loan facility agreements, and that Backstrom and/or Lindholm guaranteed the payment of each of the loans pursuant to the terms of written guarantees. The plaintiff alleges that Lindholm and Backstrom have breached the loan facility agreements and the written guarantees by refusing to pay the amounts due under the facilities and guarantees. Specifically, the plaintiff alleges that on February 9, 1989, it loaned Starlux $3,077,643.99, on September 25, 1989, it loaned Starlux $12,568,833.88, and on January 9, 1991, it extended a loan of $2 million to Castlegar (the loan agreements). The plaintiff alleges that these loans are in default.
The plaintiff further alleges that on April 3, 1991, Lindholm and Backstrom each executed a "global guarantee" by which they agreed to guarantee payment of the obligations due under the February 9, 1989 and September 25, 1989, loan facility agreements and the January 9, 1991 promissory note (the personal guarantees). CT Page 5610 Lindholm and Backstrom executed the guarantees in consideration of the plaintiff's agreement to extend the time in which payments were due under the loan facility agreements and promissory note, and to advance additional funds. The plaintiff alleges that all the conditions precedent to the repayment of past due principal and interest under the April 3, 1991 guarantees have been met, it has demanded payment from Lindholm and Backstrom under the guarantees, and that Lindholm and Backstrom have failed to make the payments due.
The plaintiff alleges that Lindholm and Backstrom dominate and control all of the loan defendants, shipping defendants and real estate defendants, and that these defendants have been operated as "a single economic enterprise" out of Greenwich, Connecticut (Economic Enterprise). The plaintiff alleges that the functions of the entities in the Economic Enterprise have not been separated, that the entities share a common staff, that the real estate defendants, shipping defendants and Starlux share the same treasurer and chief financial officer, that the cash flow projections of entity have been lumped together to arrive at a total cash flow figure, the entities frequently have used a common bank account, no entity has an "independent mind or will" with respect to any significant transaction, and millions of dollars have been transferred from the members of the Economic Enterprise without repayment.
The plaintiff further alleges that at the time that Backstrom, Lindholm and the loan defendants entered into the loan agreement and the personal guarantees, they represented to the plaintiff that they could and would honor their obligations, however they now have refused to honor their obligations, and the loan defendants appear to be insolvent. Counts one, two, nine and eleven of the plaintiff's complaint, which are against all defendants, allege claims to pierce the corporate veil, for fraudulent transfer, conspiracy and violation of the Connecticut Unfair Trade Practices Act (CUTPA), respectively. Count three, five, six, seven and eight, which are asserted against Lindholm, Backstrom and the loan defendants, assert claims based upon General Statutes § 52-562, tortious interference with a contract, intentional, negligent and innocent misrepresentation, and breach of the duty of good faith and fair dealing, respectively. Count four asserts a claim against Lindholm and Backstrom for tortious interference with a contract. Finally, count ten is asserted against the "New York plaintiffs", which the plaintiff alleges includes Starlux, Lexmar Connecticut, Lexmar Liberia, Lineas Ecoa, Gunvor, Eastgate, Lindholm and CT Page 5611 Backstrom, for violation of CUTPA.
On October 28, 1994, the defendants filed a motion to strike counts two, three, four, five, seven, nine and ten of the plaintiff's complaint, along with a supporting memorandum of law. On November 21, 1994, the plaintiff filed a memorandum of law in opposition to the motion, to which the defendants filed a reply memorandum of law.
In accordance with Practice Book § 152 a party may contest the legal sufficiency of any count of a complaint by filing a motion to strike the count. In considering a motion to strike, "the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). The facts to be considered by the court on a motion to strike include the facts that are implied and fairly provable under the allegations. Westport Bankand Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, 495,605 A.2d 862 (1992).
In considering a motion to strike, the court is limited to considering the grounds that are specified in the motion.[4]Meredith v. Police Commissioner of Town of New Canaan, 182 Conn. 138,140, 438 A.2d 27 (1980). In determining a motion to strike, "`it is of no moment that the plaintiff may not be able to prove [his] allegations at trial. . .' The sole inquiry at this stage is whether the . . . allegations, if proved, state a cause of action." Levine v. Bess and Paul Sigel Hebrew Academy of GreaterHartford, Inc., 39 Conn. Sup. 129, 132, 471 A.2d 679 (Super.Ct. 1983). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. . . . The court must construe the facts in the complaint most favorably to the plaintiff."Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988). In deciding a motion to strike, the court must consider the claims in the manner most favorable to sustaining their legal sufficiency. Bouchard v. People's Bank, 219 Conn. 465,471, 594 A.2d 1 (1991). Where the legal grounds for a motion to strike are dependant upon underlying facts that are not alleged in the plaintiff's pleadings, the defendant must "await the evidence which may be adduced at trial, and the motion should be denied."Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990).
1. Count 2
CT Page 5612
The defendants argue that count two of the plaintiff's complaint, alleging that the defendants violated the Uniform Fraudulent Transfer Act (UFTA), General Statutes § 52-552a et seq., should be stricken because: (1) the plaintiff has pleaded that the defendants should be treated as one economic entity, thereby defeating the transfer required by UFTA; the transfers at issue predate October 1, 1991, the effective date of UFTA; and it is barred by the statute of limitations.
Specifically, the defendants argue that count two should be stricken because the plaintiff has pleaded that all of the defendants should be treated as one economic entity and that their separate identities should be disregarded. Therefore, the defendants argue that "transfer" requirement of UFTA has been defeated. The defendants have failed to provide any case law in support of this contention. In opposition, the plaintiff argues that purpose of piercing the corporate veil is to impose liability on an individual or a second corporation where liability would have otherwise existed only against the first corporation, and therefore, it does not defeat the plaintiff's claim.
The Connecticut Supreme Court has stated that "[g]enerally, a corporation is a distinct legal entity and the stockholders are not personally liable for the acts and obligations of the corporation. . . . Courts will, however, disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requiresliability to be imposed on the real actor. . . . We have affirmed judgment disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (Citations omitted; emphasis added.) Saphir v.Neustadt, 177 Conn. 191, 209, 413 A.2d 843 (1979). See Zaist v.Olson, 154 Conn. 563, 573, 227 A.2d 552 (1967) (holding that controlling stockholder and related corporation were liable under "alter ego" theory).
"The piercing of the corporate veil is equitable in nature . . . . When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded." (Citations omitted; internal quotation marks CT Page 5613 omitted.) United Electrical Contractors, Inc. v. ProgressBuilders, Inc., 26 Conn. App. 749, 755, 603 A.2d 1190 (1992).
 Under Connecticut law, the corporate veil may be pierced under either the instrumentality or identity rules. Under the instrumentality rule, in any case but that of express agency, proof of three elements is required: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.
(Internal quotation marks omitted.) Id., 755-56; see alsoCampianso v. Nardi, 212 Conn. 282, 291-92, 562 A.2d 1 (1989).
Alternatively, under the identity rule the plaintiff must "show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, [such that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Emphasis added; internal quotations omitted.)Angelo Tomasso, Inc. v. Armor Construction Paving, Inc.,187 Conn. 544, 559-60, 447 A.2d 406 (1982). "The identity rule primarily applies to prevent injustice in the situation where two corporations are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities." Id., 560.
The theory of piercing the corporate veil does not, as the defendants contend, require that the entities be treated as one CT Page 5614 entity for all purposes, especially the purpose set forth by the defendants which is to defeat a valid cause of action. Accordingly, the motion to strike count two is denied on the ground that the claim is invalid because the plaintiff has pleaded a claim to pierce the corporate veil. Furthermore, the issue of whether the corporate veil should be pierced presents a question of fact;CHRO v. Travel Tour Services, Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 519557 (July 12, 1994, Hennessey, J.); Steiger v. Town of Old Lyme,
Superior Court, judicial district of New London, Docket No. 510846 (February 25, 1994, Austin, J.); therefore, the motion to strike should be denied. The defendants' motion to strike counts three and four of the plaintiff's complaint on this same ground is also denied.
In regard to the defendants' argument that count two should be stricken because the transfers at issue predate October 1, 1991, the effective date of UFTA, Connecticut adopted UFTA pursuant to No. 91-297 of the 1991 Public Acts on October 1, 1991. Tyler v.Schnabel, 34 Conn. App. 216, 220, 641 A.2d 388 (1994). Prior to October 1, 1991, fraudulent conveyances were governed by § 52-552. Due to the lack of an indication that the legislature intended UFTA to apply retroactively, UFTA has been held to apply only to transfers that occurred after October 1, 1991. Id., 220-21; see also Chrysler Credit Corp. v. Berman, Superior Court, judicial district of Litchfield, Docket No. 057971 (June 10, 1993, Pickett, J.).
In count two of the plaintiff's complaint, the plaintiff has pleaded that "[f]rom February 1989, continuing at least through 1991 (and for a period which can not be determined with specificity beyond that date) . . . funds were transferred from the Shipping Defendants and the Loan Defendants to the Real Estate Defendants." It is submitted that the motion to strike count two should be denied because whether the transfers occurred prior to the effective date of UFTA depends upon underlying facts that have not been alleged in the plaintiff's complaint, and therefore, the defendants must await the evidence adduced at trial. See LiljedahlBros., Inc. v. Grigsby, supra, 215 Conn. 348.
Finally, the defendants also argue that count two should be stricken because it is based upon § 52-552f(b), and therefore it is barred by the statute of limitations, § 52-552j, which requires a cause of action be brought within one year after of the transfer. In opposition, the plaintiff argues that the defendants have CT Page 5615 misinterpreted count two and that it is based upon § 52-552e(a)(1) and § 52-552f(a), and therefore, a cause of action must be brought within four year after the transfer was made.
"A claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike. . . . In two limited situations, however, we will allow the use of a motion to strike to raise the defense of the statute of limitations. The first is when `[t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer.' . . . The second is where `a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right it is a limitation of the liability itself as created, and not of the remedy alone.'" (Citations omitted.) Forbes v. Ballaro,31 Conn. App. 235, 239-40, 624 A.2d 389 (1993).
Section 52-552j provides that "[a] cause of action with respect to a fraudulent transfer or obligation under sections 52-552a
to 52-552l, inclusive, is extinguished unless action is brought: (1) Under subdivision (1) of subsection (a) of section 52-552e, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under subdivision (2) of subsection (a) of section 52-552e or subsection (a) of section 52-552f, within four years after the transfer was made or the obligation was incurred; or (3) under subsection (b) of section 52-552f, within one year after the transfer was made or the obligation was incurred."
As discussed above, the specific dates of the transfers at issue are underlying facts that have not been alleged in the plaintiff's complaint. Accordingly, the defendants' motion to strike count two on the ground that it is barred by the statute of limitations must be denied because it relies upon evidence outside of the pleading, and therefore, the defendants must await the evidence adduced at trial. See Liljedahl Bros., Inc. v. Grigsby,
supra, 215 Conn. 348.
2. Count 3
The defendants argue that count three of the complaint, CT Page 5616 alleging a claim for fraud in contracting a debt pursuant to § 52-562, should be stricken because the plaintiff's allegations are insufficient in that the plaintiff has failed to allege facts showing that the defendants fraudulently contracted a debt and hid assets from legal process. Specifically, the defendants rely uponFlaherty v. Schettino, 136 Conn. 222, 226-27, 70 A.2d 151 (1949), for support of their contention that to establish fraud in the contracting of a debt pursuant to § 52-562, there must be an intent not to pay at the time of the contract. In opposition, the plaintiff argues that the defendants' fraudulent intent can be inferred from the allegations that the defendants began to transfer funds after the first loan agreement in February 1989, and continuously transferred funds thereafter without repayment.
Section 52-562 provides in pertinent part that "[w]hen any person is guilty of fraud in contracting a debt, or conceals, removes or conveys away any part of his property, with intent to prevent it from being taken by legal process . . . any creditor aggrieved thereby may institute an action against him, setting forth his debt and the fraudulent act or acts particularly in the complaint." Accordingly, this statute provides that an action may be brought in situations "[w]here there is fraud in contracting the debt; where the debtor conceals, removes or conveys away any part of his estate with intent to prevent it being taken by legal process. . . ." Murawski v. Hinenberg, 114 Conn. 53, 55,157 A. 637 (1931). "The statute requires that the debt should be set forth, and that the fraudulent acts should be particularly stated in the complaint." Atwater v. Slepcow, 74 Conn. 671, 673,51 A. 1063 (1902).
In count three of the complaint, the plaintiff has alleged that there were loan agreements between the plaintiff and the loan defendants, including the loans to Starlux of $3,077,643.99 on February 9, 1989, and $12,568,833.88 on September 25, 1989, and the loan to Castlegar on January 9, 1991 of $2 million. At the time of the loan agreements, and the personal guarantees, Backstrom, Lindholm and the loan defendants allegedly represented to the plaintiff that they could and would honor their obligations. In February 1989, when the first of the loan agreements was made, through at least 1991, the plaintiff has alleged that numerous transfers were made from the shipping and loan defendants to the real estate defendants, which were not repaid, and in certain circumstances were not secured or memorialized in any contemporaneous loan agreement, and which did not accrue interest. The plaintiff alleges that the defendants knew, or should have CT Page 5617 known, that the transfers would render the loan defendants unable to meet their obligations under the loan agreements, and personal guarantees. The plaintiff has further alleged that Lindholm, Backstrom and the loan defendants are liable pursuant to § 52-562
because they have committed fraud in contracting a debt and have concealed, removed or conveyed away their property with the intent to prevent it from being taken by legal process.
Construing these facts, and those facts implied and fairly provable under these allegations, most favorably to the plaintiff, the plaintiff has sufficiently alleged that the defendants committed fraud in contracting a debt pursuant to § 52-562. Accordingly, the defendants' motion to strike count three is denied.
3. Count 4
In count four the plaintiff asserts that Lindholm and Backstrom tortiously interfered with the loan agreements between the plaintiff and the loan defendants. The defendants have moved to strike count four on the ground the plaintiff has alleged that Lindholm and Backstrom are officers and/or directors of the loan defendants, and the facts alleged are insufficient to hold them liable for interfering with the contracts of the loan defendants. In opposition, the plaintiff argues that it has not alleged that Backstrom and Lindholm are officers and/or directors of the loan defendants, and even assuming arguendo that they are officers and/or directors, the motion to strike must fail because the plaintiff has alleged that they acted for personal gain.
The Connecticut Supreme Court has long recognized a cause of action for tortious interference with contract rights. See Blakev. Levy, 191 Conn. 257, 260, 464 A.2d 52 (1983). "It is well settled that in order to sustain a cause of action for tortious interference with a contractual relations, the plaintiff must plead and prove that the defendant acted with an improper motive. . . . This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . A different rule, however, applies where tortious interference is alleged against someone who is directly or indirectly a party to the contract. . . . An officer or director of a corporation acting within the scope of his authority and on behalf of the corporation may not be held liable for interference with a contract of the corporation although there are circumstances under which personal CT Page 5618 liability may attach. . . . In order to deprive a corporate employee of his immunity, the plaintiff must establish that he acted solely for his own benefit and benefit to the corporation played no role therein. . . . It is well settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." (Citations omitted; internal quotation marks omitted.)Espinosa v. Connecticut College, Superior Court, judicial district of New London, Docket No. 522872 (June 27, 1994, Leuba, J.); see also Walsky v. Gastaldi, Superior Court, judicial district of Stamford/Norwalk at Norwalk, Docket No. 101368 (July 26, 1990, Hickey, J.)
"An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract . . . . An agent, however, can be held liable for such interference or inducement if he did not act legitimately within the scope of his duty but used the corporate power improperly for personal gain." (Citation omitted.) Murray v. Bridgeport Hospital,40 Conn. Sup. 56, 60-61, 480 A.2d 610 (Super.Ct. 1984); see alsoLenart v. City Clerk of Derby, 2 Conn. L. Rptr. 630, 631 (October 24, 1990, Fuller, J.); Bowman v. Grolsche Bierbrouwerij B.V.,474 F. Sup. 725, 733 (D.Conn. 1979)
In the plaintiff's complaint, the plaintiff alleges that Backstrom and Lindholm regularly conduct business through several companies, including Starlux, and that Backstrom and/or Lindholm dominate and control Starlux, and that Backstrom dominates and controls Castlegar. The plaintiff has not specifically alleged the exact relationship of Backstrom and Lindholm to the loan defendants. Accordingly, the defendants' motion to strike is denied because it depends upon underlying facts which are not alleged in the plaintiff's complaint, and the defendants must "await the evidence which may be adduced at trial." See LiljedahlBros., Inc. v. Grigsby, supra, 215 Conn. 348.
Furthermore, the plaintiff has alleged that "Lindholm and Backstrom have derived substantial personal benefits" from the transfer of funds from the shipping and loan defendants to the real estate defendants, including that they have lived rent free in large estates in Greenwich, Connecticut. The plaintiff has sufficiently alleged that Lindholm and Backstrom acted for their CT Page 5619 own private benefit. See Espinosa v. Connecticut College, supra;Walsky v. Gastaldi, supra.
4. Counts 5 and 7
The defendants have moved to strike counts five and seven, alleging claims for intentional and innocent misrepresentation, respectively, on the ground that they are identical to count six, which alleges a claim for negligent misrepresentation.
A request to revise may be filed in order "to obtain . . . the deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations in an adverse party's pleading." Practice Book § 147(2). Accordingly, a request to revise, and not a motion to strike, is the proper vehicle for the deletion of repetitious pleadings. See A.C. Nielsen Co. v. WangLaboratories, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 312400 (February 6, 1995, Maiocco, J.) (denying the motion to strike count two of the cross complaint on the ground that it was identical to count one because a request to revise is the proper vehicle for deleting a repetitive pleading);Johnson v. Kaiser Foundation Health Plan, Superior Court, judicial district of New Haven, Docket No. 031241 (May 18, 1994, Gray, J.) (holding motion to strike on the grounds of duplicative counts is improper); Tata v. Morgan, Superior Court, judicial district of Waterbury, Docket No. 119215 (May 4, 1994, Sylvester, J.) (denying the motion to strike because the duplicative nature of the second count was not a proper ground for a motion to strike).
The repetitive nature of the plaintiff's fifth and seventh counts is not a proper ground for a motion to strike, and therefore, the defendants' motion to strike counts five and seven on the ground that they are identical to count six is denied. SeeA.C. Nielsen Co. v. Wang Laboratories, supra; Johnson v. KaiserFoundation Health Plan, supra; Tata v. Morgan, supra.
The defendants also contend that the plaintiff's claim for intentional misrepresentation, as alleged in count five, is insufficient in that it has not been pled with particularity. Specifically, the defendants argue that the plaintiff has failed to allege that the defendants did not intend to fulfill their promise and that the misrepresentation was made for the purpose of inducing the plaintiff to act upon it.
The elements of fraudulent misrepresentation are: (1) that a CT Page 5620 false representation was made as to a statement of fact; (2) the state was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act upon it; and (4) that the latter did so act on it to his injury." J. FrederickScholes Agency v. Mitchell, 191 Conn. 353, 358, 464 A.2d 795
(1983); see also Dorsey v. Mancuso, 23 Conn. App. 629, 633,583 A.2d 811 (1990), cert. denied, 217 Conn. 809, 585 A.2d 1191 (1991);Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981). In order to prove fraudulent misrepresentation, it is not necessary for a plaintiff to prove knowledge on the part of the defendant, "only that the defendants representation was made recklessly, without belief in its truth." O'Leary v. Industrial Park Corp.,14 Conn. App. 425, 432, 542 A.2d 333 (1988).
In count five of the complaint, the plaintiff alleges that, at the time that they entered into the loan agreements and personal guarantees, Lindholm, Backstrom and the loan defendants misrepresented to the plaintiff that they could and would honor their respective obligations; that they knew, or recklessly disregarded, the fact the misrepresentations were false when they made them; that they knew, or recklessly disregarded, the fact the plaintiff would rely upon their misrepresentation; that the plaintiff did rely upon the misrepresentation; and as a result the plaintiff has suffered damages. Viewing the allegations of count five in the light most favorable to the plaintiff, the plaintiff has alleged sufficient facts to withstand the defendants' motion to strike.
5. Count 9
The defendants argue that count nine of the plaintiff's complaint, which alleges a cause of action for conspiracy against all of the defendants, should be stricken because: (1) it does allege an independent basis for an award of damages; and (2) a claim for civil conspiracy is not recognized absent an independent basis for liability resulting from acts committed in furtherance of a conspiracy.
The Connecticut Supreme Court has recognized that the elements of civil conspiracy are: "1) a combination between two or more persons, 2) to do a criminal or unlawful act or a lawful act by criminal or unlawful means, 3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, 4) which act results in damage to the plaintiff." Marshakv. Marshak, 226 Conn. 652, 665, 628 A.2d 964 (1993). The court has CT Page 5621 further stated that "[a]ccurately speaking . . . there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself." Cole v. Associated ConstructionCo., 141 Conn. 49, 54, 103 A.2d 529 (1954); see also Marshak v.Marshak, supra, 226 Conn. 669. This has been stated another way as "[t]he gist of a civil action for conspiracy is not conspiracy as such, without more, but the damage caused by acts committed pursuant to the formed conspiracy." Governors Grove CondominiumAssociation, Inc. v. Hill Development Corp., 36 Conn. Sup. 144,151, 414 A.2d 199 (1980).
In Tartaglia v. Marino, Superior Court, judicial district of Danbury, Docket No. 313696 (April 25, 1994, Moraghan, J.), which is relied upon by the defendant, the court granted the motion to strike the plaintiffs' claim for conspiracy to inflict emotional distress. The court stated that "[w]hile the plaintiffs have alleged that the defendant agreed to conspire to harass the plaintiffs, they have not alleged that it was the acts committed pursuant to, and as a result of, the formed conspiracy which caused the plaintiffs' alleged emotional distress." Id.
In count nine of the plaintiff's complaint, the plaintiff has alleged that the defendants have conspired "to do unlawful acts by unlawful means and/or lawful acts by unlawful means," including wrongfully interfering with the contracts between the plaintiff and the loan defendants, fraudulently conveying money from the loan defendants, thereby rendering them unable to meet their obligations under the loan agreements, and diverting funds from the loan defendants for unauthorized use and defrauding the plaintiff. The plaintiff further alleges that in furtherance of the conspiracy, millions of dollars have been transferred from the loan and shipping defendants to the real estate defendants, which have not been repaid. The plaintiff alleges that as a result of the conspiracy by the defendants, as described by the plaintiff, it has suffered damages. Reading count nine in the light most favorable to the pleader, the plaintiff has sufficiently plead all of the elements needed to state a legally sufficient claim for conspiracy. See Marshak v. Marshak, supra, 226 Conn. 665; see also DePasqualev. Day. Berry Howard, 9 CSCR 550, 551-52 (March 31, 1994, Berger, J.); R R Pool Home v. Ehrens, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 291825 (April 5, 1993, Ballen, J.). Accordingly, the motion to strike count nine is denied. CT Page 5622
6. Count 10
Finally, in count ten, the plaintiff alleges that the defendants have violated CUTPA, General Statutes § 42-110b(a), which provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Specifically, in count ten, the plaintiff alleges that: the New York plaintiffs conducted trade and commerce in Connecticut by engaging in shipping and maritime activities within the meaning of § 42-110a(4); the New York plaintiffs commenced an action in the Supreme Court of the State of New York on October 13, 1992; the claims asserted by the New York plaintiff are "completely without merit in fact or law and were made solely to harass and intimidate" the plaintiff; the New York plaintiffs acted in bad faith by commencing the New York action; the actions of the New York plaintiffs "constitute an unfair and/or deceptive trade practices in the conduct of trade or commerce" and violated § 42-110b; and the conduct of the New York plaintiffs offends public policy, and was immoral, unethical, oppressive and unscrupulous.
The defendants argue that count ten, which alleges a violation of CUTPA, should be stricken because it is premised upon the filing of a lawsuit which is not in furtherance of trade or commerce, and does not constitute a fraudulent or deceptive act. The plaintiff argues that the bringing of a sham lawsuit can be subject to a CUTPA claim, and therefore, count ten states a cause of action.
In Abrams v. Knowles, 3 Conn. L. Rptr. 9 (December 4, 1990, Axelrod, J.), which is relied upon by the plaintiff, an action was brought by the plaintiff seeking money damages for the defendant's failure to pay monies due under a contract. In the defendant's counterclaim, he asserted a CUTPA claim, alleging that the bringing of the suit was an attempt to force him to pay, and was a sham lawsuit. Id. The parties agreed that a sham lawsuit could be subject to a CUTPA claim. Id., 10. The court then discussed the Noerr-Pennington doctrine, as discussed in detail in SuburbanRestoration Co., Inc. v. ACMAT Corp., 700 F.2d 98, 99-102 (2nd Cir. 1983), which refers to a trilogy of United States Supreme Court cases that held that "activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition are wholly immune from federal antitrust liability unless the conduct falls within the `sham exception' to the doctrine." Id. The court then agreed with the Suburban
court's statement that "Connecticut's courts would carve out a CT Page 5623 similar exception to CUTPA" and agreed with its conclusion that the filing of a single non-sham lawsuit could not form the basis for a CUTPA claim. Id., 10-11, quoting Suburban Restoration Co., Inc. v.ACMAT Corp., supra, 700 F.2d 102. The court granted the plaintiff's motion to strike the defendant's CUTPA claim because it found that plaintiff's claim was not sham lawsuit, and therefore, the filing of that lawsuit did not violate CUTPA. Id., 11; see alsoSuburban Restoration Co., Inc. v. ACMAT Corp., 700 F.2d 98 (2nd Cir. 1983).
Similarly, in Connecticut National Bank v. Mase,3 Conn. L. Rptr. 285, 286 (January 31, 1991, Flynn, J.), upon which the plaintiff also relies, the court held that the basis for a CUTPA claim could not be the filing of one non-sham lawsuit. The court also stated, however, that "[b]ringing a sham lawsuit could subject the plaintiff to a CUTPA claim." Id., 286. The court defined a sham lawsuit as "one instituted by a plaintiff in bad faith, on grounds so flimsy that no reasonably prudent person could hold a bona fide belief in the existence of facts necessary to prove the case." Id.
Whether the action filed by the New York plaintiffs is a "sham" lawsuit cannot be determined from the facts that have been plead. See Field v. Kearns, 8 CSCR 427, 428 (May 3, 1993, Leheny, J.); Whitney Bank Trust Co. v. LaMonico, Superior Court, judicial district of New Haven, Docket No. 311758 (September 14, 1992, Zoarski, J.). Accordingly, the motion to strike count ten is denied because it depends upon facts outside of the pleadings. SeeLiljedahl Bros., Inc. v. Grigsby, supra, 215 Conn. 348.
KARAZIN, J.