**SUBURBAN RESTORATION CO., INC.,**
**Plaintiff-Appellant,**

v.

**ACMAT CORPORATION, Laborers' International Union of North America, Local 665 AFL–CIO and Robert D. Witte, Defendants-Appellees.**

**No. 466, Docket 82–7539.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 3, 1982.

Decided Feb. 9, 1983.

Lawrence W. Kanaga, Bridgeport, Conn., Zeldes, Needle & Cooper, Bridgeport, Conn., for plaintiff-appellant.

Robert D. Witte, Bronxville, N.Y. (Witte & Lestz, P.C., Alan M. Lestz, Bronxville, N.Y., of counsel), for defendants-appellees ACMAT Corp. and Robert D. Witte.

James M. Kearns, Bridgeport, Conn., for defendant-appellee Laborers' Intern. Union of North America, Local 665 AFL–CIO.

Before FEINBERG, Chief Judge, and MANSFIELD and KEARSE, Circuit Judges.

FEINBERG, Chief Judge:

Suburban Restoration Co., Inc. appeals from an order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, J., enforcing Magistrate Thomas P. Smith's order dismissing Suburban's complaint against defendants ACMAT Corporation (ACMAT), Laborers' International Union of North America, Local 665 AFL–CIO (the Union), and Robert D. Witte. Magistrate Smith and Judge Daly concluded that Suburban's suit under the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stat. § 42–110b(a), and the common law of tortious interference with a business expectancy, for damages resulting from defendants' filing of a lawsuit in a Connecticut state court was barred by the first amendment to the United States Constitution as interpreted in the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine refers to a trilogy of Supreme Court cases, *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), holding that activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition are wholly immune from federal antitrust liability unless the conduct falls within the "sham exception" to the doctrine. Because we find that Connecticut would interpret its law to exempt from liability activities excluded from the ambit of the Sherman Act by the *Noerr-Pennington* doctrine, we affirm the dismissal.

## I. Background

This case arises out of an invitation to bid issued by the City of Bridgeport, Connecticut, on October 3, 1980, seeking proposals for a contract to renovate and remove asbestos from a school building. Appellant Suburban and appellee ACMAT were among the bidders; Suburban submitted the lowest bid, and the city began the process of awarding the contract to Suburban. ACMAT, as a disappointed bidder, and appellee Union, as a city taxpayer, then brought suit against officials of the city in the Connecticut Superior Court, through their attorney, appellee Witte. Suburban was not a party to the suit. ACMAT and the Union sought a writ of mandamus and an injunction against the award of the contract to Suburban on the ground that Suburban's bid was deficient. The suit was settled when the city agreed not to award the contract to Suburban, but to resubmit the project to bidding. Suburban was not successful in the second round of bidding.

This lawsuit, in the federal courts because of diversity, ensued. Appellant Suburban claims that the state court action was a groundless suit constituting an unfair method of competition and an unfair and deceptive trade practice under CUTPA and a tortious interference with a business expectancy under the common law that caused appellant to lose $700,000. Appellees moved to dismiss for failure to state a cause of action and for summary judgment. These motions presented several issues of state law, including whether filing a groundless lawsuit can be an unfair trade practice under CUTPA. Magistrate Smith, however, granted the motion to dismiss on a ground not raised by the parties. He found that the threshold issue in the case was whether the complaint alleged conduct falling within the sham exception to the *Noerr-Pennington* doctrine, and he concluded that it did not, so that the doctrine barred Sub-

urban's suit. Judge Daly adopted this position in his order enforcing the dismissal.

The *Noerr-Pennington* doctrine and the sham exception were developed by the Supreme Court in a series of cases in which it was alleged that defendants' attempts to obtain commercially favorable actions from different branches of government violated the Sherman Act. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* supra (seeking legislation); *United Mine Workers v. Pennington,* supra (attempting to influence executive actions); *California Motor Transport Co. v. Trucking Unlimited,* supra (instituting administrative and judicial proceedings). In *Noerr* and *Pennington* the Court held that the activity alleged was outside the scope of the Sherman Act; in *California Motor Transport,* the Court recognized that the act of filing a legitimate lawsuit was within the *Noerr-Pennington* doctrine, i.e., not covered by the Sherman Act, but held that the Act can reach sham litigation such as the multiple baseless proceedings alleged in *California Motor Transport.* Since Suburban concedes that the state court suit does not fit into the sham exception, *California Motor Transport* would clearly have required dismissal if Suburban had brought suit under the Sherman Act, instead of under CUTPA and the common law. But the question remains whether the result must be similar under state law. The parties have focused their arguments on appeal on the question raised by the magistrate's decision, namely, whether the *Noerr-Pennington* doctrine is mandated by the United States Constitution. This issue apparently has not been definitively resolved by the Supreme Court and has not been squarely addressed in this circuit. See generally Fischel, Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the *Noerr-Pennington* Doctrine, 45 U.Chi.L. Rev. 80, 94–104 (1977).

Magistrate Smith concluded without much discussion that the doctrine is constitutionally mandated, and that therefore it must apply to Connecticut's law as well as to the Sherman Act. There is some support for this position in the cases, but it is not conclusive. *Noerr* expressly refrains from deciding whether the activities complained of are protected under the first amendment, basing its holding solely on a construction of the Sherman Act. 365 U.S. at 132 n. 6, 81 S.Ct. at 526 n. 6. The Court discerns an "essential dissimilarity between an agreement jointly to seek legislation or law enforcement and the agreements traditionally condemned by [the Sherman Act]," such as "price-fixing agreements, boycotts, market-division agreements, and other similar arrangements." 365 U.S. at 136, 81 S.Ct. at 529 (footnote omitted). This construction is bolstered by two considerations with constitutional overtones: the need in "a representative democracy" for "the people to make their wishes known to their representatives," 365 U.S. at 137, 81 S.Ct. at 529, and the spectre of "important constitutional questions" that would be raised if the Sherman Act were read to regulate the activity alleged. 365 U.S. at 138, 81 S.Ct. at 530. Thus, the first amendment lurks in the background of a holding that, strictly speaking, is simply an interpretation of the Sherman Act.

The decision in *Pennington* four years later adds nothing that is inconsistent with limiting *Noerr* to statutory construction. Indeed, Justice White's majority opinion states that *Noerr* held that "[t]he Sherman Act ... was not intended to bar concerted action of this kind ...." 381 U.S. at 669, 85 S.Ct. at 1592. But *California Motor Transport,* six and a half years later, presents *Noerr* and *Pennington* as resting on the two constitutionally related considerations described above, with no mention of the preceding statutory construction. Furthermore, Justice Douglas's majority opinion is filled with broad language suggesting that the first amendment forbids application of the Sherman Act to activities protected by the *Noerr-Pennington* doctrine. The majority opinion's conclusion that the doctrine applies to actions in the courts as well as to petitions of the legislative and executive branches, while not explicitly based on the constitution, is grounded in the perception that "[t]he right of access to

the courts is indeed but one aspect of the right of petition." 404 U.S. at 510, 92 S.Ct. at 611. And the holding that the activities at issue in the case are nevertheless not exempt from the antitrust laws, because they are "sham," depends on the recognition that "[i]t is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute." 404 U.S. at 514, 92 S.Ct. at 613. Thus, the magistrate's assumption that appellant's cause of action could not survive unless it fit the sham exception is not without substantial support. If indeed the *Noerr-Pennington* doctrine is mandated by the first amendment, then the doctrine must also apply to Connecticut's statute and common law.

Courts in other jurisdictions have taken this position. In *Pennwalt Corp. v. Zenith Laboratories, Inc.,* 472 F.Supp. 413 (E.D. Mich.1979), appeal dismissed, 615 F.2d 1362 (6th Cir.1980), counterclaims for violation of the Sherman Act, interference with business relationships, abuse of trademark and abuse of process were dismissed because the lawsuits complained of were not sham, and therefore were protected by the first amendment as embodied in the *Noerr-Pennington* doctrine. 472 F.Supp. at 423–24. Similarly, in *Sierra Club v. Butz,* 349 F.Supp. 934, 936–39 (N.D.Cal.1972), a state law counterclaim for inducing the United States government to break a contract with defendant was dismissed in a decision treating the *Noerr-Pennington* doctrine as a first amendment standard analogous to the "malice" standard established for defamation by *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

This circuit has not gone so far as to apply the *Noerr-Pennington* doctrine to state law causes of action. But it has, in the process of applying *Noerr-Pennington* and the sham exception to Sherman Act claims, explicitly described the doctrine as an application of the first amendment. See *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 895–96 (2d Cir.1981) (issue is whether the conduct alleged "is immunized by the First Amendment from antitrust liability under the *Noerr-Pennington* doctrine"); *Miracle Mile Associates v. City of Rochester,* 617 F.2d 18, 20 (2d Cir.1980) ("Under *Noerr,* mere solicitation of governmental action through legislative processes ... is an activity which is fully protected by the First Amendment and is immune from Sherman Act liability...."); *Mountain Grove Cemetery Assoc. v. Norwalk Vault Co.,* 428 F.Supp. 951, 956 (D.Conn. 1977) ("*Noerr* and *California Motor Transport* teach that when antitrust objectives and the right to petition for government action are in conflict, the scales must tip in favor of the First Amendment."). See also *Taylor Drug Stores, Inc. v. Associated Dry Goods Corp.,* 560 F.2d 211, 214 (6th Cir.1977) (per curiam) (referring to "rights under the First Amendment ... as those rights have been described in [*Noerr*] and [*Pennington*]").

We are not bound to follow the language of *Landmarks Holding* and *Miracle Mile* quoted above, since it was not necessary to the holdings of those cases, and since the first amendment basis of the doctrine was not treated as an issue by the court or by the parties. But we find it unnecessary to decide this constitutional issue at all. It remains an open question whether, as a matter of statutory construction, filing a groundless lawsuit is the sort of "unfair trade practice" that CUTPA was intended to prohibit. Apparently the Connecticut courts have never addressed the issue. In the absence of Connecticut precedent construing CUTPA, we must "do the best we can in estimating 'what the state court would rule to be its law.'" *Bailey Employment System, Inc. v. Hahn,* 655 F.2d 473, 477 (2d Cir.1981) (quoting *Holt v. Seversky Electronatom Corp.,* 452 F.2d 31, 34 (2d Cir.1971)). CUTPA is expressly modelled on section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and it directs the state courts and the state commissioner to be guided by federal interpretations of the federal act in interpreting the state statute. Conn.Gen.Stat. § 42–110b(b), (c). At least one court has held the *Noerr-Pennington* doctrine applicable to the

Federal Trade Commission Act. *Rodgers v. FTC,* 492 F.2d 228 (9th Cir.), cert. denied, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). Moreover, it seems likely that Connecticut's courts would also look to federal interpretations of the Sherman Act to help determine the extent of antitrust regulation under CUTPA. We believe that Connecticut's courts would be guided by the strong suggestions from the federal courts that imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems, and would construe Connecticut law to avoid those problems. Especially since *Noerr-Pennington's* statutory exemption is defined in terms of first amendment activity, we are confident that Connecticut's courts would carve out a similar exception to CUTPA and the common law, whether or not they believed that they were required to do so by the Constitution. In short, we conclude that the activity complained of here—the filing of a single non-sham lawsuit—cannot form the basis of a claim under CUTPA or Connecticut's common law of tortious interference with a business expectancy.

We affirm the judgment of the district court.