[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
Plaintiff brought this action seeking money damages for defendant's failure to pay the balance of monies due plaintiff under a contract for installation of defendants' modular home. Plaintiff sought a prejudgment attachment of defendant's property in the amount of $5,000. Following hearing on April 23, 1990, attachment was granted in the amount of $500. Defendant counterclaimed, alleging that plaintiff had not performed in a workmanlike manner. Defendant further alleged (paragraphs 6 through 9) that the bringing of the suit was an attempt to "bludgeon" defendant into payment for the inadequate performance by plaintiff, and was, in effect, a "sham" lawsuit, violative of CUTPA (Sec. 42-110(b)), causing defendant to suffer loss and entitling him to attorney's fees under Sec. 42-110(g)(d) of the General Statutes. Plaintiff has moved to strike paragraphs CT Page 4878 6 through 9 of the counterclaim.
LAW
The parties agree that a sham lawsuit, under the Noerr-Pennington line of federal cases, could be subject to a CUTPA claim.
In Suburban Restoration Co., Inc. v. ACMAT Corp.,700 F.2d 98, 99-102 (1983), the Second Circuit discussed the Noerr-Pennington doctrine in part as follows:
 The Noerr-Pennington doctrine refers to a trilogy of Supreme Court cases, Eastern Railroad Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), holding that activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition are wholly immune from federal antitrust liability unless the conduct falls within the "sham exception" to the doctrine.
 The Noerr-Pennington doctrine and the sham exception were developed by the Supreme Court in a series of cases in which it was alleged that defendants' attempts to obtain commercially favorable actions from different branches of government violated the Sherman Act. Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., supra (seeking legislation); United Mine Workers v. Pennington, supra (attempting to influence executive, actions); California Motor Transport Co. v. Trucking Unlimited, supra (instituting administrative and judicial proceedings). In Noerr and Pennington the Court held that the activity alleged was outside the scope of the Sherman Act; in California Motor Transport, the Court recognized that the act of filing a legitimate lawsuit was within the Noerr-Pennington doctrine, i.e., not CT Page 4879 covered by the Sherman Act, but held that the Act can reach sham litigation such as the multiple baseless proceedings alleged in California Motor Transport. Since Suburban concedes that the state court suit does not fit into the sham exception, California Motor Transport would clearly have required dismissal if Suburban had brought suit under the Sherman Act, instead of under CUTPA and the common law. But the question remains whether the result must be similar under state law. The parties have focused their arguments on appeal on the question raised by the magistrate's decision, namely, whether the Noerr-Pennington doctrine is mandated by the United States Constitution. This issue apparently has not been definitively resolved by the Supreme Court and has not been squarely addressed in this circuit. See generally Fischel, Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr Pennington Doctrine, 45 U. Chi. L. Rev. 80, 94-104 (1977).
 Thus, the magistrate's assumption that appellant's cause of action could not survive unless it fit the sham exception is not without substantial support. If indeed the Noerr-Pennington doctrine is mandated by the first amendment, then the doctrine must also apply to Connecticut's statute and common law.
 This circuit has not gone so far as to apply the Noerr-Pennington doctrine to state law causes of action. But it has, in the process of applying Noerr-Pennington and the sham exception to Sherman Act claims, explicitly described the doctrine as an application of the first amendment.
The critical issue for determination in the instant case is whether a lawsuit, in which application for a prejudgment attachment of defendant's property is made in the amount of $5,000 but granted after hearing only in the amount of $500, falls within the sham exception and is therefore subject to a CUTPA claim. This Court concludes that the defendant's cause of action does not fall within the sham CT Page 4880 exception.
The granting of an application for prejudgment remedy reflects the trial court's determination that the applicant has established "that there is probable cause to sustain the validity of the claim." Ledgebrook Condominium Assn., Inc. v. Lusk Corporation, 172 Conn. 577, 584 (1977); Dow Condon, Inc. v. Anderson, 203 Conn. 475, 479 (1987). While ". . . a determination of a claim's probable validity normally will entail some consideration of the amount of damages which may be found upon a full trial" (Ledgebrook, supra, 172 Conn. 585), the focus of the prejudgment remedy proceeding is "whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." (Id. at 583). Where, as in the instant case, the court has found the plaintiff to have a valid claim, although less than that sought by plaintiff, it cannot follow that such a claim is baseless and a sham. In Tulin v. Johnson, 18 Conn. Sup. 395,396 (1953), the court stated:
 In its primary meaning, "sham" is that which is false. See Webster's New International Dictionary (2d Ed.). The words "false" and "sham" are synonymous. Howe v. Elwell, 57 A.D. (N.Y.) 357, 358 ; McBride v. People, 126 Colo. 277, 282.
This Court agrees with the Suburban rationale to the effect that:
 We believe that Connecticut's courts would be guided by the strong suggestions from the federal courts that imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems, and would construe Connecticut law to avoid those problems. Especially since Noerr Pennington's statutory exemption is defined in terms of first amendment activity, we are confident that Connecticut's courts would carve out a similar exception to CUTPA and the common law, whether or not they believed that they were required to do so by the Constitution. In short, we conclude that the activity complained of here — the filing of a single non-sham lawsuit CT Page 4881 cannot form the basis of a claim under CUTPA or Connecticut's common law of tortious interference with a business expectancy.
This Court therefore concludes that since the plaintiff's lawsuit is not a sham lawsuit that the act of filing that lawsuit does not violate CUTPA.
Accordingly, the plaintiff's motion to strike paragraphs 6 through 9 of the counterclaim is granted.
AXELROD, J.