[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case involves a claim for legal fees in the absence of a written fee agreement. The defendant has filed a counterclaim alleging that the plaintiff law firm's conduct violated the Connecticut Unfair Trade Practices Act.
After assessing the credibility of the witnesses, the court finds the facts to be as follows.
In December 1993 or January 1994, the defendant, William Cardow, called Mass. Mutual Insurance Company, having heard from a friend that this company offered information about estate planning. Diane Stevens and Robert Blaikie, employees of Mass. Mutual, were engaged in holding seminars in estate planning at their Shelton office as a means of attracting insurance business. As part of this effort, Mass. Mutual offered free consultations with attorneys selected by them, in the hope that people attending such conferences would decide to complete estate plans that included various types of insurance. Ms. Stevens arranged such a meeting between Mr. Cardow and Attorney; Richard DeSarbo, a principal at the firm of Desarbo Reichert, P. C., the plaintiff in this action.
Stevens and Blaikie assured the defendant that the consultation with Attorney DeSarbo was free and involved no obligation to accept any services or to hire the attorney. The defendant had never met Attorney DeSarbo before that meeting and knew nothing about his qualifications. The defendant provided Stevens and Blaikie with financial information which they put into a report that was reviewed by Attorney DeSarbo. CT Page 7259
At the meeting, Attorney DeSarbo listened to the defendant's description of his goals and suggested the drafting of wills and trusts for the defendant and his wife to accomplish them. Attorney DeSarbo told the defendant that his fee for all phases of the process of preparing and explaining these documents would be $2,500. The defendant agrees that this was the fee quoted but denies that he asked Attorney DeSarbo to proceed.
The defendant and the attorney left the meeting with different impressions of the outcome. The attorney believed that the defendant had hired him to prepare the wills, trusts and other documents described both for the defendant and for his wife, who had not attended the meeting and who had not made any of her wishes or goals known to the attorney. The defendant left the meeting resolved to think about how to proceed, with the impression that he had not agreed to anything yet.
Attorney DeSarbo did not send the defendant or his wife a retainer letter, and no agreement for legal services was ever reduced to writing, nor did the plaintiff ever send the defendant a letter to confirm that it had been hired to perform services and the agreed compensation. The attorney assigned to another lawyer in his office the task of compiling the documents necessary to the estate plan that he thought the defendant wanted. Several weeks after the initial meeting, Attorney DeSarbo asked Diane Stevens of Mass. Mutual to arrange a meeting at which the documents could be presented to the defendant in her presence. She testified that Mass. Mutual preferred this format since clients might be confused if they received the documents by mail. There was no communication between Attorney DeSarbo and the defendant between the meeting at Mass. Mutual and Mr. Stevens' call to set up an appointment to review the documents.
When Ms. Stevens telephoned the defendant on February 23, 1994, he responded that he was not interested in proceeding with estate planning with Mass. Mutual or Attorney DeSarbo
Ms. Stevens professed not to have understood that when the defendant said he was not "ready" for a meeting he meant he was not prepared to engage the plaintiff, and she continued to call and ask the defendant to come for a meeting at Mass. Mutual until he finally made it clear that he was, instead, planning to engage an attorney of his own choosing to draft his will and other documents to effectuate an estate plan. CT Page 7260
The defendant consulted a lawyer to whom he had been referred by acquaintances and completed his will and trust documents with the help of that lawyer. The defendant was never sent any of the documents prepared by the plaintiff, and he received no benefit from their preparation. Any advice that the defendant received from Attorney DeSarbo at the initial meeting was promised in advance to be advice given without charge or obligation.
Ms. Stevens called the defendant again in March 1994 to ask him to come in and discuss estate planning with Attorney DeSarbo. The defendant repeated that he was not going to do so, and he mentioned reservations about the price quoted and working with a lawyer he had not selected.
In March, both Attorney DeSarbo and the Mass. Mutual employees sent the defendant letters stating their position that the defendant had already agreed to have the plaintiff perform services. (Exs. C and F.) The court finds that these letters memorialize only the position of the writers and do not prove the existence of any mutual agreement. On March 25, 1994, the plaintiff issued a bill to the defendant in the amount of $2,500. The plaintiff never provided the defendant with the documents prepared. The plaintiff served the defendant with the complaint in this action on April 15, 1994.
Upon being served with the complaint, the defendant sent Attorney Desarbo a letter, Exhibit I, stating that he had never consented to have the plaintiff perform work on his behalf and pointing out that he had never received the wills and trusts nor had he ever met at the plaintiff's office, as alleged in the complaint.
The defendant notified the plaintiff in that letter that he considered the pursuit of the lawsuit to constitute abuse of process and noted that he considered the plaintiff's actions to constitute an unfair trade practice. The plaintiff repeated the same allegations in amended complaints filed since 1994.
As of November 19, 1996, the defendant had incurred legal fees in the amount of $3,540 in defense of this action.
The plaintiff's amended complaint contains a troublesome number of statements that were not supported by any testimony by any of the witnesses called by the plaintiff, including Attorney CT Page 7261 DeSarbo himself:
 — At paragraph 6 of the first count of the amended complaint dated June 27, 1995, the plaintiff alleges that it "mailed to Defendant Cardow the following documents prepared by Plaintiff exclusively for Defendant Cardow: [list of six documents]."
Attorney DeSarbo testified that the documents prepared were never mailed to the defendant.
 — At paragraph 6 of the complaint, the plaintiff alleges that it sent correspondence to the defendant "on or before March 7, 1994."
No correspondence from the plaintiff dated prior to March 7, 1994 was introduced into evidence, and Attorney Desarbo admitted at trial that the March 16 letter threatening suit was his first correspondence to the defendant.
 — At paragraph 9 of the complaint, the plaintiff alleges that it "provided said services to and conducted said transaction with said Defendant in its office in North Haven, Connecticut."
At trial, Attorney DeSarbo admitted that his only meeting with the defendant was at the office of Mass. Mutual in Shelton.
 — At paragraph 10 of the second count of the amended complaint, the plaintiff alleged that
 "Defendant Cardow did not respond to Plaintiff's said request and notification of March 16, 1994 [the request that the defendant call the plaintiff] and by such conduct, accepted his obligation, under the agreements with the Plaintiff to pay Plaintiff's fee for legal services already rendered."
At trial, the plaintiff did not take the position that failing to reply to the March 16 letter gave rise to an obligation to make payment.
Existence and Enforceability of Contract for Legal Services
The plaintiff claims that the defendant verbally agreed to have it perform certain legal services for an agreed fee of CT Page 7262 $2,500. This court finds that no such agreement was reached, but that the defendant, after a forceful presentation in which an attorney and two insurance sales people were urging him to buy services, resolved to think about what to do and to do comparison shopping. While the plaintiff may have believed that the; defendant was persuaded to go along with the plan, the court finds that he did not agree and never did or said anything to suggest that he expected any services beyond the free consultation.
The court finds that while the plaintiff and the insurance sales people were eager to perform services and sell insurance to the defendant, he was not eager to go along with their plan and did not do so. Had the plaintiff asked the defendant to sign a retainer letter or had it confirmed the purported agreement by a letter as required by Rule 1.5(b) of the Rules of Professional Conduct, the parties would have had the same understanding as to whether the plaintiff was or was not being hired. The plaintiff's failure to obtain a written agreement has created an ambiguous situation. The court finds that the defendant did not agree and did not realize that the others at the meeting had assumed that he had agreed to their proposals.
Because this court finds that there was no agreement for legal services, it is not necessary to decide whether an oral contract would be enforceable nor to decide whether the ruling inSilver v. Jacobs, 43 Conn. App. 184, cert. denied, 239 Conn. 938
(1996), which concerns fee agreements governed by C.G. S. §52-251 (a), would be extended to agreements that are subject only to the provisions of Rule 1.5(c) of the Rules of Professional Conduct.
With regard to its claim for quantum meruit based on unjust enrichment, the court finds that the plaintiff presented no evidence to support its claim that it had sent legal documents to the defendant. On the contrary, Attorney DeSarbo testified that the documents had not been sent to the defendant. Accordingly, the plaintiff has not proved the conferring of a benefit on the defendant, a requisite of its cause of action. See Providence ElectricCo. v. Sutton Place, Inc., 161 Conn. 242, 246 (1971).
CUTPA Claim
The defendant alleges in his counterclaim that the plaintiff CT Page 7263 sought to compel him; to accept and pay for legal services to which he had not agreed and as to which no written retainer agreement or representation agreement was ever supplied. He alleges that both these attempts and the pursuit of this lawsuit constituted unfair trade practices in violation of the Connecticut Unfair Trade Practice Act ("CUTPA") C.G.S. § 42-110a.et seq.
In order to establish a CUTPA claim, a party must prove that the act or practice complained of constituted an unfair or deceptive act or practice in the conduct of any trade or commerce. Conn. Gen. Stat. § 42-110b.
The Connecticut Supreme Court has summarized the applicable criteria as follows:
 1. Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
 2. wether it is immoral, unethical, oppressive or unscrupulous; unscrupulous;
 3. whether it causes substantial injury to consumers, competitors or other businessmen.[sic]
Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591-92
(1995), citing; Conway v. Prestia, 191 Conn. 484, 492-93 (1983).
In assessing the third criterion, courts must determine whether the injury is substantial, whether it is outweighed by a countervailing benefit to consumers or competitors that the practice produces, and whether it is an injury that the consumers themselves could not reasonably have avoided. Williams Ford,Inc., 232 Conn. 592; McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 569-70 (1984).
It is well established that CUTPA applies to the business or "entrepreneurial" practices of lawyers toward clients or prospective clients. Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510 (1983); Larsen Chelsey Realty Co. v.Larsen, 232 Conn. 480, 496 n. 19 (1995); Brunswick v. Inland
CT Page 7264Wetlands Commission, 125 Conn. App. 543, 552 (1991).
The Federal Trade Commerce Act, on which CUTPA is modelled, and which provides a frame of reference for the scope of CUTPA; see Normand Josef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486 (1994); has been held to apply to the conduct of an attorney who had prepared a dunning letter and participated in a collection scheme violative of 15 U.S.C. § 45 (a)(1). In reWilson Chemical Co., 64 F.T.C. 168, 186-87, 190 (1964).
CUTPA is a remedial statute and as such is to be liberally construed. Normand Josef Enterprises, Inc. v. ConnecticutNational Bank, 230 Conn. 509 (1994); Barrett Builders v. Miller,215 Conn. 316, 323 (1990).
The defendant claims that the plaintiff violated CUTPA by billing and suing the defendant for preparation of legal documents that it had not in fact provided, and from relying on false statements in continuing to prosecute the lawsuit.
The filing of a lawsuit has been held not to be actionable under CUTPA unless the claim made in the lawsuit is "baseless" or a "sham." Suburban Restoration Co., Inc. v. Acmat Corp. , 700 F.2d 98
(2d Cir. 1983). The Second Circuit identified a sham lawsuit as one that is "baseless" that is, one that is not supported by the facts known to the party that files it but that is meant to impose burdens on the party sued. 700 F.2d 100.
The plaintiff law firm alleged that it was entitled to quantum meruit recovery even in the absence of a written fee agreement because it had provided the wills, trusts and living wills to the defendant, who had thereby received a benefit. The plaintiff knew that the documents were never in fact mailed to the defendant but were retained by the plaintiff because the defendant refused to proceed in the manner that Mass. Mutual and the plaintiff had urged. The plaintiff continued its case on the basis of this allegation even after the defendant pointed out that the documents had not been provided and in the absence of any evidence that they had been. The plaintiff falsely pleaded that it had met with the defendant at its own office, an allegation that would bolster a claim that an agreement existed. The plaintiff continued to assert this statement in pleadings when he knew that no such additional meeting had occurred.
The inaccuracies in the complaint were not minor but CT Page 7265 substantial: provision of the wills and trust documents was the basis for the unjust enrichment claim.
By subjecting the defendant to allegations that had no basis in fact, when the plaintiff had no reason not to be accurate about the facts, the plaintiff violated the public policy against frivolous claims. That policy is expressed, among other places, in Conn. Gen. Stat. § 52-226 and § 52-568.
The court finds that there is a public policy against filing false pleadings, that it is an "established concept of unfairness," and that the defendant need not additionally establish the second element of the "cigarette rule" as set forth at page 9 above. See Cheshire Mortgage Service Inc. v. Montes,223 Conn. 80, 106 (1992); McLaughlin Ford, Inc. v. Ford MotorCo., 192 Conn. 558, 569 n. 15 (1984); Prishwalko v. Bob ThomasFord, Inc., 33 Conn. App. 575, 585 (1994).
This court notes that the false pleadings at issue are not mere errors reflecting a client's carelessness or uncertainty, about the facts: the law firm is the plaintiff, and it persisted in setting forth the baseless claims in repeated amended complaints after the defendant had called their falsity to its attention.
This court does not reach the issue whether conduct that is unethical under the Rules of Professional Conduct supports a CUTPA claim, and specifically this court does not rule that the failure to put a fee arrangement in writing as set forth in Rule 1.5(b) of those rules renders the fee unrecoverable.
Rather, this court finds that the plaintiff's collection practice of knowingly making false statements in an attempt to secure payment for documents it had not in fact given to the defendant constituted unscrupulous and oppressive conduct in the conduct of the plaintiff's business that is an unfair trade practice actionable pursuant to CUTPA.
The court finds that the injury to the defendant was the necessity of securing legal counsel to oppose the false allegations, and that the defendant has been damaged to the extent of the $3,540.00 in fees incurred. While the defendant testified that he suffered emotional distress as well as out-of-pocket expenses, he has cited no authority for the recovery of such damages under CUTPA. CT Page 7266
Conclusion
Judgment shall enter in favor of the defendant as to the claims of the plaintiff.
Judgment shall enter in favor of the defendant William Cardow, against the plaintiff DeSarbo Reichert P.C. in the amount of $3,540.00 as to the counterclaim. The defendant shall recover his statutory costs upon filing a bill of costs with the clerk of the court.
Beverly J. Hodgson Judge of the Superior Court