[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action in four counts: (1) vexatious suit; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and, (4) violation of CUTPA.
After a trial, the court finds the facts as follows:
Plaintiff is the owner of an apartment complex at 100 West Street, New Britain, Connecticut. In 1988 he had a contract with Dainty Rubbish to collect the rubbish and trash of his complex. In 1990 defendant took over the account from Dainty Rubbish and had plaintiff sign a new contract. Thereafter, the parties entered into another contract for the period of November 1, 1991 to November 1, 1995, at the monthly rate of $89.88 for service and $113.56 for disposal fees (total $203.44), with a 7% increase in the service fee on each anniversary date. The contract, although facially for four years, provided that its term shall be for a minimum of one year and "automatically renewed from year to year unless either party shall give written notice of termination to the other at least thirty (30) days prior to the annual termination date." It also provided that if the plaintiff failed to pay monthly charges, defendant was entitled to all cost of collection including reasonable attorney fees.
In the period after November 1, 1991 plaintiff complained to defendant about the quality of the service, but he continued to CT Page 4276 pay defendant the monthly charges. In late October 1992, defendant sent plaintiff the November bill with a 7% increase as provided in the contract. On November 1, 1992 the contract was automatically renewed for another year, the plaintiff having failed thirty days before that date to exercise his right of termination. In December plaintiff contacted another trash remover and informed defendant he could get the service for $181 per month. Plaintiff and, defendant's representative, Peter Rappoccio, discussed price, the figure of $185 a month being mentioned, but defendant sent plaintiff a proposed contract at $200 a month. Plaintiff refused this offer, insisting on $185 a month. When defendant would not accept this rate, plaintiff told Rappoccio to remove defendant's dumpster.
Plaintiff had not paid the defendant's charges for November and December 1992, amounting to to $431.37. When plaintiff asked defendant to remove the dumpster, Rappoccio reminded plaintiff the contract was in force until November 1993. Plaintiff disputed this but still demanded the removal of the dumpster. Rappoccio agreed but wanted payment of the $431.37, the exact amount of the unpaid charges for November and December 1992. Plaintiff agreed to pay this amount. In those discussions no mention was made of defendant' s right to lost profits for the balance of the term of the contract.
In that conversation. Rappoccio asked plaintiff to mark the check "final payment," because it would then be evidence that plaintiff was refusing to pay anymore on the contract, so defendant could remove the dumpster without risk of breaching the contract on its part. Plaintiff issued the check in that way and it was cashed by defendant. Plaintiff, on the other hand, testified the check represented a resolution of all the differences between the parties.
Rappoccio went to defendant's attorneys and told them the facts of the dispute with plaintiff, including the payment of the $431.37, the reason he wanted the check marked "final payment", and the basis of defendant's claim for damages for lost profits for the balance of the term of the contract. Defendant s attorneys wrote a letter to plaintiff on January 17, 1993 demanding payment of $8,340.17 "representing total amount due under the contract". No indication was given how this amount was arrived at. It appears to this court to be based on the total amount payable on the contract over its remaining twenty-four months, in disregard of the provision for annual termination by either party. CT Page 4277 Plaintiff responded on January 26, 1993, that the contract was terminated and he did not owe any money to plaintiff.
On February 10, 1993, defendant's attorney filed in court an application for prejudgment remedy for $4,000, claiming lost profits "for the complete term of the agreement and collection costs," by reason of plaintiff's breach.
Plaintiff, pro se, although acting with the advice of his son, who is an out-of-state lawyer, filed a motion to dismiss. When the motion and the application for prejudgment remedy came before Judge Thomas Parker in the Superior Court in New Britain on May 10, 1993, defendant's attorney withdrew the prejudgment remedy application, Judge Parker denied plaintiff's motion to dismiss, and after hearing plaintiff explain how the check, marked "final payment," was cashed by defendant, advised plaintiff to get a lawyer, that he saw a good defense, and plaintiff should remember "summary judgment, accord and satisfaction."
On May 19, 1993, defendant served plaintiff with a complaint alleging defendant's breach of contract and seeking lost profits. Plaintiff filed a motion for summary judgment, without supporting affidavit, but submitting the contract between the parties and the check marked "final payment." Plaintiff's brief asserted, "As a result of the parties' inability to agree on a contract rate, they agreed that if the defendant was to tender $431.37 as final payment, the defendant would remove its dumpster from the defendant's property, and the parties contractual relationship would end."
Defendant filed Rappoccio's affidavit in opposition to plaintiff' s summary judgment motion, stating that plaintiff's check represented "monies for past due services and [defendant] never agreed to accept payment as a completion of defendant' s obligation under the contract."
The court, per Judge Marshall Berger, granted plaintiffs motion for summary judgment with a short one sentence opinion stating: "There was a dispute as to the amount [sic] and term of the contract and the acceptance of the check marked final payment (twice) constitutes an accord and satisfaction." Country FireDoor Corp. v. C. F. Wooding Co., 202 Conn. 277, 281 (1987)."
Defendant did not appeal that decision. Rappoccio testified CT Page 4278 that since defendant's claim was only $4,000, that amount did not justify the cost of an appeal.
Plaintiff was upset by defendant claiming in January 1993 that plaintiff still owed defendant monies. Following the defendant initiating the lawsuit on May 19, 1993, plaintiff suffered severe stress. On May 22, 1993 he felt his heart palpitating and checked himself into the emergency room of John Dempsey Hospital. He saw other doctors over the course of the next year and is still under medication. He has also suffered humiliation, loss of sleep and mental anguish over the litigation. He incurred a John Dempsey Hospital bill of $830.63. Plaintiff s attorneys have tendered a bill in connection with this litigation in the amount of $16,989.88. The evidence also shows that plaintiff is no stranger to litigation, having represented himself in more than fifty civil actions.
I. Vexatious Suit
The three elements of a cause of action for vexatious suit are want of probable cause, malice and termination of suit in plaintiff's favor. Vandersluis v. Weil, 176 Conn. 353, 356
(1978).
"Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action" id. "The legal idea of probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Wall v. Toomey,52 Conn. 35, 36 (1884); accord Ledgebrook Condominium Assn., Inc. v. LuskCorporations, 172 Conn. 577, 584 (1977); DeLaurentis v. NewHaven, 220 Conn. 225, 256 (1991). The test for probable cause is objective, DeLaurentis v. New Haven, supra, at 257, and what facts constitute probable cause is a matter of law. Brodrib v.Doberstein, 107 Conn. 294, 296 (1928); Vandersluis v. Weil, at 356, supra
In the instant case, at the time in November and December 1992 the parties negotiated over a new monthly rate for trash removal, the contract had been automatically renewed for the period of November 1, 1992 to November 1, 1993, and plaintiff had not paid the monthly charges for November and December, 1992. When the parties could not agree on a new monthly CT Page 4279 charge (defendant demanding $200 and plaintiff insisting on $185), plaintiff ordered defendant to remove its dumpster. Defendant agreed provided plaintiff paid the $431.37 owed for November and December. Plaintiff did not dispute this amount.Defendant's representatives insisted plaintiff s check be marked "final payment" so that defendant could not be charged with breach of contract when it took away the dumpster.
However, in those conversations, the parties never discussed defendant's claim for loss of profits for the remainder of the year the contract had to run.
Defendant not only had a bona fide, but a reasonably justified, belief that its claim for lost profits still remained and it had solid grounds for pursuing it. A reasonable person participating in the conversation between the parties could have concluded, as defendant did, that the check marked "final payment" (as defendant's representative insisted it be marked), constituted satisfaction of the November and December 1992 unpaid charges only, and did not in any way relate to defendant's claim for lost profits for the balance of the year.
Plaintiff argues that Judge Berger's granting plaintiffs motion for summary judgment in defendant's suit for lost profits bars this court under the doctrine of collateral estoppel from reaching the above conclusion. This court disagrees.
"Collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." Mazziotti v. AllstateInsurance Co., 240 Conn. 799, 812 (1997). However to invoke the doctrine "there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." Conn. National Bank v.Rytman, 241 Conn. 24, 38 (1997).
Plaintiff relies upon Zafelle v. Caratolo, 816 F. Sup. 115
(D.Conn. 1993), to support his contention that collateral estoppel applies here. In that case Caratolo had sued Zafelle in state superior court seeking specific performance of a real estate contract. Zafelle moved to discharge the lis pendens Caratolo had recorded in that action. The court denied Zafelle's motion, finding probable cause to sustain the validity of Caratolo's claim. After judgment was entered in Zafelle's favor, CT Page 4280 he brought an action for vexatious suit against Caratolo in federal court. The federal court granted Caratolo's motion for summary judgment on the grounds that the state court's finding of probable cause in Caratolo's action constituted collateral estoppel on that issue which was the heart of the vexatious suit claim.
However, in Shea v. Chase Manhattan Bank,19 Conn. L. Rptr. 642
(1997) our Superior Court reached a different result. It determined that the vacating of a prejudgment attachment in a prior action by reason of plaintiff's failure to prove probable cause of prevailing, did not justify granting summary judgment against the plaintiff, when sued in a subsequent vexatious suit. The court found a difference between the issues of probable cause in each proceeding.
Even if Zafelle is correct, it does not support plaintiff's claim in the case before this court. Here defendant's motion for a prejudgment remedy in its action against plaintiff was withdrawn so there was no court finding either way on the issue of probable cause in that action.
Judge Berger did render a judgment for plaintiff on the merits of that action and that judgment has the res adjudicata effect of barring defendant from suing plaintiff again on that claim. Wade'sDairy. Inc. v. Fairfield, 181 Conn. 556, 559 (1980); Restatement (Second) Judgments § 18(1). But that decision did not determine the central issue in this case of whether or not defendant here had probable cause for bringing the suit in the first place. That issue is separate and distinct from a decision on the merits. If the plaintiff in this case, defendant in the first case, wanted a factual finding that the first suit had been commenced without probable cause, he could have invoked the procedure of C.G.S. § 52-226a that allows the court to make a finding that the suit lacked merit and was brought in bad faith. Such a finding would have been admissible in this vexatious suit. § 52-568; Crocco v. Centilman, CV 96 0150150A (April 1, 1997, D'Andrea, J.). He failed to do that.
A further reason that plaintiff cannot invoke the doctrine of collateral estoppel is that he failed to plead it in reply to defendant's special defense alleging the first suit was brought with probable cause and in good faith. Beccia v. Waterbury,185 Conn. 445, 452 (1981); Practice Book § 10-50 (Rev. 1998). CT Page 4281
Plaintiff also argues that Judge Berger deciding for the plaintiff here on a motion for summary judgment reveals the lack of merit in defendant's initial suit and dramatically demonstrates the lack of probable cause for bringing it. The argument is invalid. The fact is was a summary judgment decision is irrelevant. If it were, every summary judgment decision in favor of a defendant could always generate a vexatious suit. The essence is that Judge Berger's decision did not reach the issue of probable cause for bringing the initial suit.
This court heard at trial all the evidence relating to the disputes between the parties. Based on that evidence it concludes there were objective and reasonable grounds for defendant initiating its suit against plaintiff for breach of contract and lost profits.
A further basis for deciding for the defendant is that defendant relied upon the advice of counsel. As our Supreme Court stated in Vandersluis v. Weil, supra, at 361, "Advice of counsel is a complete defense to an action of . . . vexatious suit when it is shown that the defendant . . . instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, on which he has been charged with knowing. The fact that the attorney's advice was unsound or erroneous will not affect the result."
In the instant case, the court finds defendant did inform its lawyers of all the relevant facts relating to the disputes between the parties, including the genesis of wording the check "final payment," defendant's claim for the undisputed amount for November and December, 1992 charges, the automatic renewal of the contract, and defendant's claim for lost profits. Defendant' s attorneys made a mistake in writing the letter to plaintiff demanding $8,340, in disregard of the contract provision for year to year renewals, but when they initiated the lawsuit against plaintiff, their claim was for lost profits for the balance of the year plus I reasonable attorneys fees. Defendant conferring with its attorneys and relying on their i advice constitutes a valid defense to this action.
Finally, plaintiff has failed to show malice on the part of the defendant. Malice in this context means acting "for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based." 3 Restatement (Second) Torts § 676. DeLaurentis v. New Haven, supra. f.n. 16, at CT Page 4282 256. Malice may be inferred from lack of probable cause.Vandersluis v. Weil, supra. 356.
Here this court finds probable cause for defendant bringing its suit for breach of contract, and further finds defendant brought this suit solely to collect damages on that claim and for no other ulterior purpose. Thus this court finds plaintiff failed to prove malice.
Accordingly, plaintiff cannot prevail on its count of vexatious suit.
II. Intentional Infliction of Emotional Distress
In order for plaintiff to prevail in a suit for intentional infliction of emotional distress, four elements must be proven: (1) the action intended to inflict emotional distress, or that he knew or should have known that emotional distress was likely to result form his conduct; (2) the conduct was extreme and outrageous; (3) defendant's conduct was the cause of plaintiff;s distress; and, (4) the emotional distress sustained by plaintiff was severe. Petvan v. Ellis, 200 Conn. 243, 253. 1 Restatement (Second) Torts § 46. The gravamen of the tort is the intent to cause injury. Hustler Magazine v. Falwell, 485 U.S. 46, 53
(1988), De Laurentis v. New Haven, supra, 267. The conduct on which the suit is based must exceed " all bounds usually tolerated by decent society [and be] of a nature which is especially calculated to cause, and does cause, mental distress of a very serious nature." W. Prosser W. Kerton, Torts (5th Ed.) § 12, 60.
In De Laurentis v. New Haven, supra, our Supreme Court clearly stated that the allegations in a civil suit complaint "are absolutely privileged at common law and that no cause of action for intentional infliction of emotional distress based on those statements can lie." 120 Conn. at 263.
And in Petyan v. Ellis, supra, the court held that where one insists upon his rights in a permissible way even if he is aware such insistence may cause emotional distress, he "cannot be held liable for the intentional infliction of emotional distress."200 Conn. at 255.
Moreover, here plaintiff has failed to prove that defendant intended to cause plaintiff emotional distress and that CT Page 4283 defendant's conduct in bringing its suit for breach of contract was extreme and outrageous. Thus plaintiff cannot prevail on this count.
III. Negligent Infliction of Emotional Distress
The essence of a cause of action for negligent infliction of emotional distress is that the defendant breached a duty of care owed to plaintiff by defendant negligently acting so as to create an unreasonable risk to plaintiff of emotional distress and his conduct caused such distress. Montinieri v. Southern New EnglandTelephone Co., 175 Conn. 337 (1978). Applying the standard of the reasonable and prudent person, the test is whether defendant should have realized his acts were likely to cause plaintiff such distress. Id. 345. Wright, Conn. Law of Torts, (3rd Ed.) § 30, p. 46.
The cases of DeLaurentis and Petyan, cited above to deny plaintiff' s recovery for his claim for intentional infliction of emotional distress, apply with greater force to his claim for negligent infliction of emotional distress. This is the rationale in Moses v. Mc Williams, 549 A.2d 950, 953 n. 4 (Pa.Super.Ct., 1988), followed by the Federal District Court of Connecticut inDoe v. Blake, 809 F. Sup. 1020, 1028 (D.Conn. 1992).
Here, plaintiff also failed to show that defendant should have anticipated that its prosecuting its claim for damages based on plaintiff's breach of contract would cause plaintiff any emotional distress beyond that normally associated with litigation. Moreover, plaintiff had plenty of experience with litigation, having himself brought numerous suits against his tenants. Plaintiff's claim on this count is denied.
IV. Violation of CUTPA
The court in Suburban Restoration Co., Inc. v. Acmat Corp.,700 F.2d 98, 102 (2d. Cir. 1983), applying Connecticut law, held that "filing a single non-sham lawsuit [one having probable cause] cannot be the basis of a claim under CUTPA. . ."
This court further finds defendant's conduct did not violate any "established concept of unfairness" and was not "immoral, unethical, oppressive, or unscrupulous." A-G Foods, Inc. v.Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990). Consequently, plaintiff failed to prove defendant violated Connecticut Unfair CT Page 4284 Trade Practices Act, Gen. Stat. § 42-110a et seq.
Conclusion
Based on the foregoing, judgment may enter in favor of defendant on all counts of the complaint.
R. Satter, JTR