FRIENDS OF ROCKLAND SHELTER
ANIMALS, INC. (FORSA),
Plaintiff,

v.

Samantha MULLEN and Humane
Society of the United States
(HSUS), Defendants.

No. 03 CIV. 5715(WCC).

United States District Court,
S.D. New York.

April 12, 2004.

Seligman & Seligman, Esqs. (Delice Seligman, Esq., Of Counsel), Kingston, NY, for Plaintiff.

Norwick & Schad (Kenneth P. Norwick, Esq., Judith L. Bachman, Esq., Of Counsel), New York City, for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Friends of Rockland Shelter Animals, Inc. ("FORSA") brings this action against defendants Samantha Mullen and the Humane Society of the United States ("HSUS") alleging tortious interference with a prospective business advantage.[1] Defendants have interposed a counterclaim alleging that plaintiff's suit is a strategic lawsuit against public partic-

ipation ("SLAPP suit") and that they are entitled to their attorney's fees and damages under N.Y. CIV. RIGHTS LAW § 70–a. Defendants move for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). For the reasons stated herein, defendants' motion is granted and plaintiff's Complaint and defendants' counterclaim are dismissed.

### BACKGROUND

Beginning in July 2002, FORSA entered into negotiations with the County of Rockland (the "County") to operate an animal shelter on premises leased from the County. (Complt.¶ 7.) At that time, Hi Tor Animal Care Center ("Hi Tor") had a contract with the County to run the shelter that was due to expire. (Id. ¶ 8.) Hi Tor regularly utilizes euthanasia to control the animal population of the shelter and was found by an inspector to be in violation of County Resolution 319 ("Resolution 319"), a provision that imposes certain minimum standards upon animal shelters located within the County. (Id. ¶¶ 14, 18.) FORSA advised the County that it could run a "no-kill" shelter on the premises, update the shelter, and comply with Resolution 319 on a budget that was substantially the same as Hi Tor's budget. (Id. ¶¶ 9–10.) The County's finance committee appeared quite receptive to this proposal and it approved unanimously a resolution granting FORSA the contract to run the shelter (the "FORSA Resolution"). (Id. ¶ 11.) The FORSA Resolution was scheduled for consideration by the County Legislature on March 4, 2003. (Id. ¶ 12.)

On February 19, 2003, Mullen, a program coordinator with HSUS, sent to

---

**1.** Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. FORSA is a not-for-profit corporation organized under the laws of New York State with its principal place of business in Rockland Coun-

ty, New York. (Complt.¶ 1.) HSUS is a not-for-profit corporation organized under Delaware law with its principal place of business outside New York. (Ans.¶ 3.)

County Executive C. Scott Vanderhoef a letter asking the County Executive to reconsider his decision to recommend approval of the FORSA Resolution. (Norwick Affm., Ex. D.) She noted that although Hi Tor needed to make improvements, her "overall impression of the shelter was positive." In her opinion, the shelter was clean and the animals seemed "in good health and non-stressed." Although the premises required certain repairs, Hi Tor's failure to make those repairs was caused by budget constraints, not neglect. Mullen defended Hi Tor's euthanasia policy on the ground that there are more animals than acceptable homes for them. Finally, she stated that while the shelter appeared to be in violation of Resolution 319, the standards imposed by that resolution are too difficult for Hi Tor, or other shelters operating under similar circumstances, to abide by. (*Id.*)

FORSA contends that this letter contained false and misleading statements and was sent maliciously to interfere with its prospective business advantage. (Complt. ¶ 13.) Specifically: (1) Mullen's statement that Resolution 319 imposed unrealistic standards was false because those standards were followed by many shelters across the country including one in Ulster County, New York (*id.* ¶ 16); and (2) Mullen's statements defending Hi Tor ran contrary to the positions HSUS adopted in its "Seven Basic Policies for Every Animal Shelter." (*Id.* ¶¶ 14, 18.)

Thereafter, at the March 4, 2003 session of the County Legislature, the FORSA Resolution was defeated. A number of legislators that voted against replacing Hi Tor quoted from Mullen's letter to Vanderhoef. (*Id.* ¶ 20.) FORSA filed suit in the Supreme Court of the State of New York, County of Rockland seeking $2 million in damages for alleged tortious interference.

Defendants removed the action to this Court on the basis of diversity jurisdiction.

## DISCUSSION

### I. *Governing Standard*

 The governing standard for a grant of judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is identical to the standard applied when considering a motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) (citations omitted). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.* A complaint should not be dismissed under Rule 12(c) unless it appears that the plaintiff "cannot state any set of facts that would entitle him to relief." *Id.* Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal under Rule 12(c). *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997). In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference. *See* FED. R. CIV. P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996).

### II. *FORSA's Interference Claim*

Although we are wholeheartedly sympathetic with FORSA's mission to operate a "no-kill" shelter in the County, this lawsuit is not the proper vehicle for FORSA to air its grievances or achieve its goals because defendants' participation in the political process is protected by the First Amendment as implemented in the *Noerr–Pennington* doctrine.

■ Interference with a party's prospective business advantage is actionable only where the interfering party employs "wrongful means." *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir.1998). "The definition of wrongful means under New York law includes 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure.'" *Id.* When a plaintiff claims the defendant tortiously interfered with a prospective business advantage by lobbying a governmental entity, courts applying New York law analyze the First Amendment issue under the *Noerr–Pennington* doctrine. *See Fox News Network, L.L.C. v. Time Warner Inc.*, 962 F.Supp. 339, 345 (S.D.N.Y.1997) (holding that the *Noerr–Pennington* doctrine applied to claims for interference with prospective business relations); *Alfred Weissman Real Estate v. Big V*, 268 A.D.2d 101, 707 N.Y.S.2d 647, 651–55 (2d Dep't 2000) (same); *cf. Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983) (concluding that the Connecticut Supreme Court would apply the *Noerr–Pennington* doctrine to common law claims for interference because the doctrine is an application of the First Amendment).

■ The *Noerr–Pennington* doctrine was developed in a trilogy of cases wherein the Supreme Court held that attempts to influence governmental action are not actionable under the antitrust laws unless the attempts fell within the "sham exception." *See E. R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Cal. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Lobbying activities fall within the "sham exception" when "they are found to be a 'sham' to disguise what is otherwise nothing more than an attempt to directly injure a competitor and the politi-

cal actor has no real interest in the outcome." *Hamilton v. Accu–tek*, 935 F.Supp. 1307, 1317 (E.D.N.Y.1996). Overtly corrupt conduct, such as threatening or bribing a public official, has also been ruled to be outside the protection of the doctrine. *See Fed. Prescription Serv. v. Am. Pharm. Ass'n*, 663 F.2d 253, 263 (D.C.Cir.1981). Fraudulent acts are not protected by the *Noerr–Pennington* doctrine when they occur in the adjudicatory process or where false information is filed with an administrative agency with deceptive intent. *See id.; Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F.Supp.2d 221, 224 (S.D.N.Y. 2002). The Second Circuit has recognized that because an important policy behind the *Noerr–Pennington* doctrine is the need to protect the right of the people to participate in the political process, the doctrine is "an application of the first amendment." *Suburban Restoration*, 700 F.2d at 101. Therefore, it is relevant outside the context of antitrust actions. *See id.* Accordingly, courts apply the *Noerr–Pennington* doctrine to state law claims for tortious interference. *See In re Dr. Reddy's Labs., Ltd.*, No. 01 Civ. 10102, 2002 WL 31059289, at *13, 2002 U.S. Dist. LEXIS 17287, at *40 (S.D.N.Y. Sept. 19, 2002) (collecting cases).

■ Mullen's letter to County Executive Vanderhoef is an attempt to influence the government within the meaning of the *Noerr–Pennington* doctrine. Therefore, her statements in that letter are not actionable unless defendants' actions fall within the "sham exception" to the doctrine or were overtly corrupt. The "sham exception" does not apply in the present case because FORSA's interference claim is premised on its contention that defendants misrepresented the true facts to the County Legislature in order to help Hi Tor remain in business, not solely to damage

FORSA. Even lobbying activities that are unethical or result in deception are not actionable under the *Noerr–Pennington* doctrine. *See Noerr Motor Freight,* 365 U.S. at 140, 81 S.Ct. 523; *Big V.,* 268 A.D.2d 101, 707 N.Y.S.2d at 653. Moreover, there is no indication that defendants engaged in any overtly corrupt criminal behavior in an effort to influence the County Legislature.

■ FORSA argues that Mullen's letter is not protected by the First Amendment because the First Amendment right "to petition the Government for a redress of grievances" only applies to petitions to one's own government. U.S. CONST. Amend. 1. Therefore, FORSA contends, defendants' cannot cloak themselves in the protections afforded by the First Amendment because they are not citizens of the County or the State. (Seligman Affm. ¶ 5.) Not surprisingly, FORSA has offered no authority that supports its position. The only case that even arguably supports it is *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.* wherein the court held that the *Noerr–Pennington* doctrine does not apply when the defendant petitions a foreign government. 331 F.Supp. 92, 108 (C.D.Cal.1971). *Occidental Petroleum* appears, however, to be the minority view. *See, e.g., Carpet Group Int'l v. Oriental Rug Imps. Ass'n,* 256 F.Supp.2d 249, 266 (S.D.N.Y.2003) (holding that the *Noerr–Pennington* doctrine applies to petitions to foreign governments); *see also Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1366 (5th Cir.1983) (same). However, even if it were uniformly followed, *Occidental Petroleum* could not be extended to deny First Amendment protection to citizens of one state who petition another state's government without violating the Privileges & Immunities Clause of the United States Constitution. U.S. CONST.

Art IV. Sec. 2 ("The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states.") Accordingly, we conclude that defendants were engaged in protected activity and that FORSA's Complaint must be dismissed in its entirety.

## III. *Defendants' Counterclaim*

■ N.Y. CIV. RIGHTS LAW § 70–a allows a court, in its discretion, to award attorney's fees and damages when the plaintiff has filed a SLAPP suit as defined in § 76(a). Costs and attorney's fees may be awarded if the plaintiff's action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. CIV. RIGHTS LAW § 70–a(1)(a). Compensatory and punitive damages are available only where it is shown that the suit was brought "for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." *Id.* § 70–a(1)(b)(c). However, even if the defendant establishes that the suit is a SLAPP suit brought under circumstances that entitle it to and that it is entitled to damages under § 70–a, the award of damages is within the sole discretion of the trial court. *See Miness v. Alter,* 262 A.D.2d 374, 375, 691 N.Y.S.2d 171, 173 (2d Dep't 1999); *In re West Branch Conservation Assoc., Inc. v. Planning Board of Town of Clarkstown,* 222 A.D.2d 513, 515, 636 N.Y.S.2d 61, 63 (2d Dep't 1995).[2]

■ In the present case, even if FORSA's action is a SLAPP suit within the meaning of the statute, defendants are not entitled to damages. FORSA's suit was commenced under a cognizable legal theo-

---

2. If FORSA continued to pursue this action despite the Court's ruling on this motion, a better case could be made that attorney's fees are appropriate under § 70–a.

ry and it presented facts that tended to show some of Mullen's statements were misleading. Although the arguments presented by the defendants in their twenty-five page Memorandum of Law [3] convinced the Court that their activities were protected under the *Noerr–Pennington* doctrine, FORSA argued that the privilege should not apply where a party petitions a government to which that party has no ties. Although we found that argument unpersuasive, it is not frivolous. Moreover, even if we concluded that FORSA's suit was brought "without a substantial basis in law and fact," we would decline to award costs and fees at this stage of the litigation because we do not believe they are warranted in the present case. *West Branch Conservation Assoc.*, 222 A.D.2d at 515, 636 N.Y.S.2d at 63 (holding that decision to award attorney's fees or damages under § 70–a is discretionary).

Defendants contend that if we grant their motion, they should be allowed to continue to pursue their counterclaim because they have moved only to dismiss FORSA's Complaint. (Defs. Mem. Supp. Mot. Dismiss at 25.) We disagree. Defendants' motion for judgment on the pleadings implicates the same issues as its counterclaim for attorney's fees and damages. Thus, the record is fully developed and we have concluded that FORSA's suit was not brought "without a substantial basis in law or fact." Allowing defendants to proceed with their counterclaim would be a futile exercise that would serve only to increase defendants' damages and waste judicial resources. Accordingly, the counterclaim is also dismissed.

### CONCLUSION

For the reasons stated herein defendants Samantha Mullen and the Humane Society of the United States's motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is granted. Accordingly, plaintiff Friends of Rockland Shelter Animals, Inc.'s Complaint and defendants' counterclaim for damages under N.Y. CIV. RIGHTS LAW § 70–a are both dismissed with prejudice but without costs or attorneys' fees.

SO ORDERED.

---

**3.** The sheer magnitude of this Memorandum of Law indicates that FORSA's suit was not wholly without merit.